## IN RE: PETITION OF BABCOCK DEVELOPMENT CO.
### Agenda Nos. 5149-5153
Property Appraisal Adjustment Board, Dade County

August 31, 1982

**APPEARANCES OF COUNSEL**

**Robert D. Korner** for petitioner.

**Daniel A. Weiss,** Assistant County Attorney.

# OPINION OF THE COURT

MALCOLM B. WISEHEART, JR., Special Master.

THIS MATTER came on to be heard before me as Special Master for the Property Appraisal Adjustment Board in and for Dade County, Florida, and the undersigned having heard argument of counsel, and having reviewed and considered the Memorandum filed by the Petitioner dated April 30, 1982, and the Letter-Memorandum filed on behalf of the Dade County Property Appraiser dated June 10, 1982, and being otherwise fully advised in the premises, the undersigned finds the facts relating to this matter to be as follows:

## FINDINGS OF FACT

1. The Petitioner filed a timely application with the Property Appraiser for consideration for Agricultural Classification for the year 1981.

2. The subject property consists of approximately one hundred thirty-two (132) acres located in the Northwest One-Quarter (NW ¼) of Section 28, Township 55, Range 39, and lying in Dade County, Florida.

3. The Petitioner filed a request for change in zoning resulting in Resolution Number Z-174-79, by which approximately seven and one-half (7½) to eight (8) acres of the subject property were re-zoned by the County Commission for GU (Interim District) to EU-1 (Single Family One Acre Estate District) and the balance of the subject property was re-zoned to EU-M (Estate Modified District).

4. Objectors to the re-zoning filed a timely Petition for Writ of Certiorari to the Circuit Court. After the Circuit Court reached a decision, the matter was appealed to the Third District Court of Appeals, which issued an Opinion on March 9, 1982, upholding the County Commission's re-zoning of the subject property.

5. Both parties stipulate and agree that the subject property was used for agricultural purposes as of January 1, 1981 and that the property would have been entitled to Agricultural Classification for ad valorum tax purposes but for the prior re-zoning of the subject property.

6. Petitioner's 1981 Application for Agricultural Classification was denied by the Property Appraiser.

7. The Petitioner filed, in timely fashion, a Petition to Review Denial of Exemption with the Property Appraisal Adjustment Board.

## CONCLUSIONS OF LAW

As both parties are fully aware as evidenced by their submissions to the Board, Florida Statutes Section 193.461(4)(a)(3) provides as follows:

"The Property Appraiser shall re-classify the following lands as non-agricultural:

. . . . . . . . . . .

(3) Land that has been zoned to a non-agricultural use at the request of the owner subsequent to the enactment of this law . . . Florida Statutes Section 193.461(4)(a)(3).

In its well-written and well-researched Memorandum, the Petitioner has raised and argued three (3) issues relative to why the agricultural classification sought should be granted by the Board in the particular facts of this case:

I. Was the subject property zoned to a non-agricultural use?

II. Assuming, *arguendo,* that the property was zoned to a non-agricultural use, when was the zoning accomplished?

III. Does Florida Statutes Section 193.461(4)(a)(3) apply when property is zoned from a non-agricultural zone to another non-agricultural zone?

These issues are treated in the discussion below, which discussion adopts the Petitioner's organization and formulation of the issues.

### I. Was the subject property zoned to a non-agricultural use?

In its Memorandum, the Petitioner points out that in order for property to be disqualified from agricultural classification under Florida Statutes Section 193.461(4)(a)(3), the use to which the property is re-zoned has to be "non-agricultural". The Petitioner observes that the only zoning classification which is specifically dedicated for agricultural is "AU". The Petitioner argues that agricultural use was permitted with respect to the subject property both according to the zoning prior to the change (GU) and the zoning after the change (EU-M) and that therefore the land in question had not been "zoned to a non-agricultural use" within the meaning of Florida Statutes Section 193.461(4)(a)(3).

The Petitioner is undoubtedly correct that general commercial agricultural use is permitted in the GU zoning. See, Dade County Code Section 33-194 et seq. However, examination of Article XX, Section 33-244 of the Dade County Code does not appear to indicate any agricultural use is permitted in EU-1 zoning. It is true that Section 33-

226(4), Section 33-226(6) and Section 33-226(7) permit limited agricultural use in the EU-M zoning; however, such agricultural use is either extremely limited in scope or must be "incidental to an existing residential use". Accordingly, the undersigned concludes that the limited agricultural use which may be made of land under the EU-M zoning is not the "good faith, commercial agricultural use" contemplated by Florida Statute Section 193.461(3)(b). Accordingly, the undersigned also concludes that EU-M and EU-1 zoning represent "non-agricultural uses" within the meaning of Florida Statute Section 193.461(4)(a)(3). The latter statute, therefore, appears to be applicable to the present facts.

Petitioner has also suggested that the Petitioner's continued agricultural use of the property might constitute a "legal, non-conforming use" and that, therefore, the statute does not apply. Usually, a non-conforming use by a party who has not initiated the re-zoning is permitted on the theory it would be an injustice and unreasonable hardship to compel the immediate suppression of an otherwise lawful and already established business. See, e.g. *Fortunato v. Coral Gables,* 47 So.2d 321 (Fla. 1950) and *Nicholson v. Wyatt,* 77 So.2d 632 (Fla. 1955). The law does not favor "non-conforming uses" and the recognition of "non-conforming uses" is intended as temporary device to alleviate hardship. 82 AmJur 2d, Zoning and Planning Section 179. However, where one has created the hardship as by knowingly purchasing the property with its zoning limitations but with the intention of making a future, unauthorized use, one cannot claim a legal, non-conforming use. *Edelstein v. Dade County,* 171 So.2d 611 (Fla. 3rd DCA 1965). In the instant case, the change in zoning to a non-agricultural zoning was not involuntarily imposed upon the Petitioner by others; the change was requested and the new zoning was initiated by Petitioner—indeed, the change to the new zoning was fought for by the Petitioner in both Circuit Court and at the appellate levels. Clearly, any "hardship" wrought by the change was self-inflicted and the Petitioner should not be permitted to claim the benefit of a doctrine primarily designed to alleviate hardship. Moreover, in seeking the zoning change to a non-agricultural use, the Petitioner voluntarily relinquished its legal right to engage in agriculture (with its favorable tax treatment) in exchange for other, presumably more profitable, uses of its property. The benefit of agricultural classification is intended to inure to persons who are committed to keeping their property in agricultural production. Florida Statutes Section 193.461(4)(a)(3) is simply intended to keep a property owner from "having it both ways". By that statute, a property owner who has opted for a zoning change

212

to non-agricultural use automatically loses the preferential tax treatment intended for persons who are willing to keep their land committed to agricultural production. Application of the doctrine of "legal, non-conforming use" in the instant circumstances, as urged by the Petitioner, would simply frustrate the legislative purpose of Florida Statutes Section 193.461(4)(a)(3) and lead to the anomalous result that the property owner would be receiving a favorable upgrading in the use (and value) of his property while at the same time receiving preferential ad valorem tax treatment. Clearly, it is one thing to apply the doctrine to avoid hardship to a property owner who wants no more than to continue the same business he has always operated and quite another to suggest that the doctrine should be applied to bestow an economic and tax windfall on a property owner who has sought and successfully obtained a favorable zoning change. For these reasons, the Petitioner's continued agricultural use of the property after the zoning change requested by the Petitioner should not be considered a "legal, non-conforming use".

## II. When was the re-zoning accomplished?

The Petitioner points out that objectors filed a timely Petition for Writ of Certiorari to the Circuit Court with respect to Resolution Z-175-79, which was passed by the County Commission on July 30, 1979. The Circuit Court's decision on this matter was apparently appealed to the Third District Court of Appeals, which did not issue its Opinion upholding the County Commission's re-zoning until March 9, 1982. Since the correctness of the County Commission's action was subject to reversal until the Third District Court of Appeals' decision became final, the Petitioner argues, no re-zoning had been accomplished as of the assessment date, January 1, 1982, and, therefore, the re-zoning should not be considered for the current tax year.

The Petitioner is certainly correct that the general uncertainty which is engendered by an appeal is often such as to discourage a property owner from making actual use of new zoning which he has obtained until the appeal has been finally resolved. However, the decision of whether or not an owner should postpone making use of a new zoning classification is merely a business matter; it is clear from a legal point of view, that (except where an injunction has issued) an owner is *permitted* to make all such uses of his property as are allowed under a new zoning classification immediately upon the re-zoning and notwithstanding the existence or the institution of any litigation challenging the correctness of the re-zoning decision. Thus, the undersigned concludes that for the purpose of Florida Statutes Section 193.461(4)(a)(3),

the subject property was effectively re-zoned to a non-agricultural use as of July, 1979.

### III. Does Florida Statutes Section 193.461(4)(a)(3) apply when property is zoned from a non-agricultural zone to another non-agricultural zone?

In the following section of its Memorandum, the Petitioner points out again that neither the classification prior to the zoning change (GU) nor the classifications after the change (EU-M and EU-1) are nominally "agricultural". The Petitioner then points out that according to the case of *Harbor Ventures, Inc. v. Hutches,* (Fla. 1979) 366 So.2d 1173, Florida Statutes Section 183.461(4)(a)(3) is applicable only where land which has previously been zoned agricultural is changed to a non-agricultural zoning at the request of its owner. For the reasons set out earlier, the undersigned concludes the GU zoning, while not nominally "agricultural", is agricultural for the purpose of Florida Statutes Section 193.461(4)(a)(3). When the zoning classifications are viewed in this fashion, clearly *Harbor Ventures, Inc. v. Hutches* affords the Petitioner no relief, as the requirements of that case are met.

The Petitioner then refers to the case of *Fogg v. Broward County* (4th DCA 1981) 397 So.2d 944. As the Petitioner correctly points out, *Fogg* dealt with the same statute here under consideration, namely, Florida Statutes Section 193.416(4)(a)(3). In *Fogg,* the Court Surveyed recent decisions in which the prevailing question is whether "property soon to be used in non-agricultural development may be maintained as agricultural land and so taxed until the first shovel is actually turned in non-agricultural pursuits". See, e.g., *Straughn v. Tuck,* 354 So.2d 368 (Fla. 1978); *Roden v. K & K Land Management,* 368 So.2d 588 (1978); *Fisher v. Schooley,* 371 So.2d 496 (2d DCA 1979); *Department of Revenue v. Goembel,* 382 So.2d 783 (5th DCA 1980); *Bass v. General Development Corporation,* 374 So.2d 479 (1979); and *Harbor Ventures, Inc. v. Hutches,* 366 So.2d 1173 (1979). After reviewing these decisions, the Fourth District Court of Appeals, in *Fogg,* concluded that a change of zoning from "agricultural" to "planned unit development" did not preclude the granting of agricultural classification for ad valorum tax purposes where the property in question remained in actual agricultural use. The Court concluded specifically:

"Under the statutes and precedents construing them, actual use remains the test, and we conclude that the owners herein were entitled to agricultural classification for the years in question." 397 So.2d 944 at 950.

*Fogg,* however, is factually distinguishable in that in reversing the

214

lower Court's denial of agricultural classification, the Appellate Court placed substantial reliance on the finding that the municipal authorities had "condoned" the continued agricultural use. We do not know the exact form of the condonation, however, we do know that the record contained actual, affirmative evidence of such condonation:

> "Notwithstanding the terminology of the P.U.D. Ordinance, *other documentation in the record* shows that the City of Miramar herein condoned the continued agricultural use on the property in question, at least pending its actual use as a residential development under the P.U.D. zoning." (emphasis added). 397 So.2d 944 at 949.

The record in the instant case is devoid of any actual, affirmative evidence of condonation by any municipal, or by the County, authorities as to the continued agricultural use of the property. If there were any condonation of the continued agricultural use by the municipal or County authorities in this case, the record simply does not reflect same except in the purely passive sense that there was no evidence of any attempts by the County to cite the Petitioner for any zoning violations pursuant to the new classifications. In proceedings before the Property Appraisal Adjustment Board, the burden of going forward with the evidence and the burden of proof is upon the petitioning taxpayer who must present evidence excluding every reasonable hypothesis of a correct determination by the Property Appraiser. *Markham v. Kauffman* 284 So.2d 416 (Fla. 1969); *Homer v. Dade Shopping Center, Inc.,* 222 So.2d 834 (Fla. 1969); and *Jar Corporation v. Culbertson,* 246 So.2d 144 (3rd DCA 1971). Accordingly, the undersigned concludes that the Petitioner has not sufficiently demonstrated "condonation" so as to render applicable the ruling in *Fogg v. Broward County.*

A great deal of the remainder of the Petitioner's well-reasoned Memorandum is dedicated to the general proposition that "actual use" is becoming the touchstone for the granting of Agricultural Classification for ad valorem tax purposes according to recent appellate cases. The undersigned finds no fault with this statement as a general description of the current trend of the law. It is important, however, for the efficient and orderly administration of the tax system, that such changes as take place originate from the Florida Supreme Court and the Appellate Court levels. The function and duty of the Property Appraisal Adjustment Board of Dade County, on the other hand, is simply to apply the existing law as determined by the Courts having jurisdiction over it. See Rule 12D-10.03 Department of Revenue Regulations.

The fact of the matter is that Florida Statutes Section 193.461

**215**

(4)(a)(3), whatever its ultimate fate, currently remains upon the statue books, has not been declared unconstitutional, and has not been rendered inapplicable to the present facts by any decision known to the undersigned within the Eleventh Judicial Circuit, by the Third District Court of Appeal, or by the Florida Supreme Court. There is only one case which seriously restricts its applicability, namely, *Fogg v. Broward County,* supra., which was decided by the Fourth District Court of Appeal and which appears to be factually distinguishable for the reasons set forth above.

In the absence of direct authority to the contrary, the Board must apply Florida Statute Section 193.461(4)(a)(3) and application of that statute requires that the relief sought by the Petitioner be denied.

## RECOMMENDATIONS

Based on the foregoing Findings of Fact and Conclusions of Law, the undersigned recommends as follows:

1. That the denial by the Property Appraiser of the Application for Agricultural Classification filed by Babcock Development Co., with respect to the above referenced Folios be upheld.

2. That the Petition for Review of Denial of Agricultural Classification filed by Petitioner, Babcock Development Co., with respect to the above referenced Folios be denied.