374 So.2d 479 (1979)
James W. BASS, Etc., et al., Appellants,
v.
GENERAL DEVELOPMENT CORPORATION, a Delaware Corporation, Appellee.
No. 52146.
Supreme Court of Florida.
June 28, 1979.
Rehearing Denied September 21, 1979.
Daniel C. Brown, Asst. Atty. Gen., Tallahassee, William F. Willes of Willes, Bittan & Willes, Fort Pierce, and Gaylord A. Wood, Jr., Fort Lauderdale, for appellants.
Parker D. Thomson and Susan B. Werth of Paul & Thomson, Miami, for appellee.
SUNDBERG, Justice.
Appellants appeal to this Court following a final judgment of the Circuit Court for St. Lucie County, Florida, declaring Section 193.461(4)(a)4, Florida Statutes (1975), unconstitutional. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution.
Appellee owns certain realty which, from 1970 to the date of final judgment, was under a cattle grazing lease and was exclusively devoted to agricultural activity. In 1971 and 1972, appellee's land was classified as agricultural for ad valorem tax purposes.
In 1972, the legislature enacted Chapter 72-181, Section 1, Laws of Florida, which amended Section 193.461(4)(a) to read:

*480 The assessor shall reclassify the following lands as nonagricultural... .
4. Land for which the owner has recorded a subdivision plat subsequent to the enactment of this law.
The effective date of Chapter 72-181, Laws of Florida, was July 1, 1972, and it applies to ad valorem taxes levied after December 31, 1972.
In September, 1972, appellee filed a subdivision plat for a portion of its land. Relying upon Section 193.461(4)(a)4, Florida Statutes, appellant James W. Bass, as St. Lucie County property appraiser, denied appellee an agricultural tax classification on this platted land for the tax year 1973. In June, 1973, appellee filed subdivision plats on its remaining lands. For the years 1974, 1975, and 1976, the property appraiser denied an agricultural tax classification for appellee's parcels again relying on Section 193.461(4)(a)4. For each of the tax years in question, appellee sought review of the denial of agricultural classification. In 1973, the St. Lucie County Board of Tax Adjustment overturned the property appraiser's denial, but the denial was reinstated by the Department of Revenue. In 1974, 1975, and 1976, the Board of Tax Adjustment upheld the denial of an agricultural tax classification.
Beginning in 1974, appellee filed four suits challenging the annual denial of an agricultural tax classification and attacking the constitutionality of Section 193.461(4)(a), as amended.[1] The statute was challenged, inter alia, on the grounds that: (1) it violated Article VII, Section 4(a), Florida Constitution; (2) it violated the equal protection and due process clauses of both the Florida and Federal Constitution; and (3) it conflicted with Section 195.062, Florida Statutes (1975). Appellee's cases were consolidated and summary judgment was entered in its favor. In its summary judgment, the trial court found that Section 193.461(4)(a)4, Florida Statutes (1975), is unconstitutional because it violates due process by creating an irrebuttable presumption that land for which the owner has recorded a subdivision plat is nonagricultural. In reaching its decision, the court expressly declined to reach the equal protection question and the challenge based on Article VII, Section 4(a), Florida Constitution. Further, the court did not address the statutory conflict claim asserted by appellee. Final judgment was entered on the summary judgment in favor of appellee.
In his final judgment, the trial judge ordered, in part, that:
2. Any real property taxes levied against Plaintiff General Development Corporation [appellee] in excess of the taxes which Plaintiff has already paid for 1973, 1974, 1975 and 1976 on tax parcels nos. 3420-730-0001.000/8, 3420-735-0001.000/3, 3420-740-0002.000/6 and 3420-740-0003.000/3 in St. Lucie County (collectively the "Property"), solely because of the non-agricultural reclassification of such parcels, are declared illegal, erroneous, invalid and void. The levy of such taxes is set aside and Defendants are enjoined from any collection thereof.
For the reasons hereinafter expressed, we conclude that the circuit judge was correct in declaring Section 193.461(4)(a)4, Florida Statutes (1975), to be unconstitutional.
The first question for our consideration is whether Section 193.461(4)(a)4, which requires the property appraiser to reclassify as nonagricultural land upon which the owner has recorded a subdivision plat, is repugnant to Article VII, Section 4(a) of the Florida Constitution. The latter provision provides that "[a]gricultural land ... may be classified by general law and assessed solely on the basis of character or use." Appellee contends that the statute precludes strict allegiance to the constitutional requirement that land be assessed on the basis of character or use. This mandate can only be complied with, it is argued, if *481 land is also classified on the basis of character or use.
Appellee fails to take into account the distinction between classification and assessment of land. Classification of land for ad valorem tax purposes is a matter committed to the legislature. It is separate from and precedes the assessment of land on the basis of character or use, which is the domain of the property appraiser based on statutory guidelines. As evidenced by Section 193.461(3)(b) and (6)(a), Florida Statutes (1975), the distinction between classification and assessment is observed in the legislative enactments which implement Article VII, Section 4(a), Florida Constitution. Subsection (3)(b) sets out seven criteria to be utilized in determining whether land should be classified as agricultural. The criteria to be considered in assessing property under subsection (6)(a), however, differ from the standards used in subsection (3)(b) to determine its classification. In Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976), we elucidated this distinction between classification and assessment. There, we rejected an argument that Section 193.461(4)(c), Florida Statutes (1975), impermissibly impinges upon the constitutionally authorized assessment under Article VII, Section 4(a), Florida Constitution. That statute creates a rebuttable presumption that land which is purchased for more than three times its appraised agricultural value is not used primarily for commercial agricultural purposes, which use is a prerequisite to an agricultural classification. The Circuit Court of Polk County, Florida, declared Section 193.461(4)(c), Florida Statutes (1975), unconstitutional as a violation of the requirement in Article VII, Section 4(a), that assessment be made solely on the basis of character or use. In reversing this ruling on appeal, we concluded that the statute affects only the classification of land for tax purposes, rather than its assessment:
Nor are we persuaded that the challenged statute is unconstitutional under Article VII, Section 4(a), Florida Constitution, which provides that "agricultural land or land used exclusively for noncommercial recreational purposes may be classified by general law and assessed solely on the basis of character or use." It is alleged that the statutory presumption impinges upon the nature of the assessment authorized by the Constitution. We conclude, however, that the challenged statutory language affects only the classification of purportedly agricultural property, not its assessment.
326 So.2d at 424 (emphasis in original).
In the case before us, the statute in question also affects only the classification of land.
Although Article VII, Section 4(a) of our State Constitution mandates that the assessment of agricultural land be based upon its character or use, no similar restriction governs the criteria according to which such land is classified. In Rainey v. Nelson, 257 So.2d 538 (Fla. 1972), we sustained a legislative enactment which classifies land as nonagricultural according to criteria completely unrelated to the actual use of the taxpayer's property. The statute at issue in Rainey, Section 193.461(4)(b), Florida Statutes (1973),[2] conferred upon county agricultural zoning boards the authority to deny an agricultural classification if the property was bounded by urban or metropolitan development on two or more sides and the board found that continued use of the property for agricultural purposes would deter orderly community expansion. Section 193.461(4)(b) was sustained due, in part, to our determination that Article VII, Section 4(a), is permissive rather than mandatory; that it empowers the legislature to remove the favored treatment of agricultural property. As we noted in Rainey, "there is no `right' to [this] special treatment... ." We further concluded that the enactment constituted a valid exercise of the State's police power and, consequently, appellant was not denied equal protection or due process of law. This is so because the public welfare is fostered by the removal of favored tax treatment from those lands, the continued *482 agricultural use of which has ceased to serve the best interests of the community, by hindering its growth and development.
Appellee's argument that land must be classified for ad valorem tax purposes according to the use to which it is put purportedly draws support from the opinion of this Court in Straughn v. Tuck, 354 So.2d 368 (Fla. 1977). There, we reviewed the legislative history of the enactments regarding agricultural classifications:
Florida's original "Greenbelt Law," Chapter 59-226, Laws of Florida (1959) extended preferential treatment to lands "used exclusively for agricultural purposes ..." and all subsequent enactments have been consistent, at least with reference to the use requirement. In the leading case on this subject, the Fourth District Court of Appeal unequivocally stated:
The favorable tax treatment provided by this statute is predicated on land use, that is, physical activity conducted on the land. (Footnotes omitted) Under the terms of this statute, as we understand them, if the land is physically used for agricultural purposes, it must be accorded agricultural zoning, provided the use is primarily for bona fide agricultural purposes. Hausman v. Rudkin, 268 So.2d 407 (Fla. 4th DCA 1972).
In accord see Smith v. Parrish, 262 So.2d 237 (Fla. 1st DCA 1972) and Smith v. Ring, 250 So.2d 913 (Fla. 1st DCA 1971).
In 1972, Section 193.461 was substantially modified by Chapter 72-181, Laws of Florida (1972). However, as evidenced by subsection (3)(b) of the statute, "use" is still the guidepost in classifying land . .. .
354 So.2d at 370.
Based upon our examination of these statutes, we concluded that "[a]gricultural use is now and always has been the test [in classifying land]" under Section 193.461(3). That statement merely constitutes a recognition that the legislature has generally chosen to classify land on the basis of use rather than an implication that Article VII, Section 4(a) of our Constitution requires that result. However, the above quote from Tuck is somewhat misleading in that we failed to distinguish the single instance considered by this Court prior to Tuck wherein the legislature chose not to base agricultural classification upon the "use" standard. In Rainey v. Nelson, supra, we sustained the constitutionality of Section 193.461(4)(b), Florida Statutes (1973), which permits county agricultural zoning boards to deny an agricultural classification if the prescribed statutory criteria are satisfied, irrespective of the taxpayer's continued agricultural use of the subject property.[3]
Appellee next contends that Section 193.461(4)(a)4, Florida Statutes (1975), deprives it of due process of law in that: (1) the statute is arbitrary, unreasonable and not reasonably related to a valid legislative purpose; and (2) it creates an impermissible irrebuttable presumption because there is no rational relation between the fact proved (platting) and the fact presumed (that the platted land is not presently being used for good faith commercial agricultural purposes). This is purportedly contrary to the opinion of this Court in Straughn v. K & K Land Management, Inc., supra. The circuit court based its invalidation of Section 193.461(4)(a)4 on the second ground.
The taxable status of property is determined on January 1 of each year. Section 192.042, Florida Statutes (1975). This is the date on which the property appraiser determines whether a specified parcel of property is entitled to the preferential tax treatment accorded agricultural property. See Overstreet v. Ty-Tan, Inc., 48 So.2d 158 *483 (Fla. 1950). Appellee argues that the actual (present) use of its land on the assessment date, rather than the use which it intends to make of the property at some future date, is determinative of whether it should have received an agricultural classification. Because Section 193.461(4)(a)4 creates an irrebuttable presumption that property upon which a subdivision plat has been filed is presently being used for nonagricultural purposes, argues appellee, the enactment effects a denial of due process. Appellee points to the stipulation between itself and appellants that the subject property constitutes agricultural land as defined by Section 193.461(3)(b), supra, and that the sole basis for its reclassification is the filing of a subdivision plat. Therefore, posits appellee, subsection (4)(a)4 renders its actual use of the property immaterial to the determination of whether it is entitled to an agricultural classification.
Appellants, on the other hand, argue that the recording of a plat constitutes a clear signal of a change in the present use of the property from agricultural to nonagricultural. Consequently, the fact presumed by Section 193.461(4)(a)4, that lands within its ambit are in fact being utilized for nonagricultural purposes, is rationally related to the fact proved (that platting has occurred). Appellants alternatively point to the decision of the Court in Rainey v. Nelson, supra, wherein, by sustaining the constitutionality of Section 193.461(4)(b), Florida Statutes (1973), we implicitly recognized that the legislature may classify property according to criteria which are unrelated to its present physical use. Consequently, argue appellants, the legislature is free to define nonagricultural property in the manner accomplished by Section 193.461(4)(a)4 even if this definition renders the existence of present agricultural use immaterial to the classification. Appellee submits that although a valid legislative purpose exists which justifies the employment of a standard unrelated to present agricultural use in Section 193.461(4)(b), because there is no similar justification for applying a nonuse standard to subdividing property owners, subsection (4)(a)4 effects a denial of equal protection.
It is clear that Section 193.461(4)(a)4 constitutes an attempt by the legislature to balance competing State policies with regard to agriculture on the one hand and taxation on the other. The people of this State, recognizing that agriculture cannot withstand taxation on the basis of the highest and best economic use to which land might be put, have provided that agricultural land may be assessed solely on the basis of its agricultural use. On the other hand, this State also has a strong interest in taxing property at its full value so that every property owner will be required to contribute his fair share of taxes. See Article VII, Section 4(a), Florida Constitution; Chapter 193, Florida Statutes (1975); Walter v. Schuler, 176 So.2d 81 (Fla. 1965). The legislature has poised the balance between these interests by generally providing that only property which is primarily devoted to a good faith commercial agricultural use shall be entitled to preferential treatment. See Section 193.461(3)(b), Florida Statutes (1975). Because the legislature has failed to expressly define the term "use," however, it has been the responsibility of our courts to determine the meaning which that body intended to accord the term. In construing those statutory provisions related to agricultural property wherein the legislature has chosen to employ the "use" standard for determining eligibility for preferential tax treatment, the courts have consistently held that actual (present) use, rather than intended (future) use is the controlling test. See Interlachen Lake Estates v. Snyder, 304 So.2d 433 (Fla. 1973); Hausman v. Rudkin, 268 So.2d 407 (Fla. 4th DCA 1972); Schooley v. Wetstone, 258 So.2d 483 (Fla. 2d DCA 1972); McKinney v. Hunt, 251 So.2d 6 (Fla. 1st DCA 1971). Similarly, a statute providing exemption from ad valorem taxes for nonprofit hospitals has been interpreted to render actual use of the purported tax exempt facility on the date of assessment the controlling factor in the grant of an exemption. In Dade County Taxing Authorities v. Cedars of Lebanon Hospital Corp., 355 So.2d 1202 (Fla. *484 1978), where actual use of a facility as a nonprofit hospital had not commenced by January 1, the assessment date, exemption was denied for that tax year despite the fact that the taxpayer intended to utilize the facility in an exempt manner at a time shortly subsequent to the date of assessment. Accord, Lake Worth Towers v. Gerstung, 262 So.2d 1 (Fla. 1972). As we noted in Cedars of Lebanon, the actual use doctrine has also been applied to homestead exemptions. Actual physical occupancy of a home as of the statutorily specified date is an essential ingredient of the homestead exemption right. See Croker v. Croker, 51 F.2d 11 (5th Cir.1931); Solary v. Hewlett, 18 Fla. 756 (1882). Cf. Anderson Mill & Lumber Company v. Clements, 101 Fla. 523, 134 So. 588 (1931).
In the case before us, we are persuaded that the legislature was attempting, through the enactment of Section 193.461(4)(a)4, Florida Statutes (1975), to preclude preferential ad valorem tax treatment for property which is not being used primarily for good faith commercial agricultural purposes. This enactment creates a conclusive presumption that land which was previously classified as agricultural based upon its use consistent with that classification has, by virtue of the more filing of a subdivision plat, been converted to a present nonagricultural use. Because this presumption is irrebuttable, the constitutionality of Section 193.461(4)(a)4 under the Due Process Clause must be measured by determining (1) whether the concern of the legislature was reasonably aroused by the possibility of an abuse which it legitimately desired to avoid; (2) whether there was a reasonable basis for a conclusion that the statute would protect against its occurrence; and (3) whether the expense and other difficulties of individual determinations justify the inherent imprecision of a conclusive presumption. See Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); Gallie v. Wainwright, 362 So.2d 936 (Fla. 1978).[4]
As we have indicated, the legislative desire to extend preferential tax treatment only to those individuals who are in fact utilizing their property for agricultural purposes is reasonable. However, Section 193.461(4)(a)4 is simply not rationally related to the achievement of that goal. This is so because there is no rational connection between the fact proved and the ultimate fact presumed. United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Straughn v. K & K Land Management, Inc., supra. It is not reasonable to presume that the landowner who has done no more than file a subdivision plat has ceased to use his property for agricultural purposes. The filing of a subdivision plat has as little to do with the present use of property as does the fact that the owner of land previously denominated as agricultural has acquired the property for a price which is three or more times its agriculturally assessed value. Yet in Straughn v. K & K Land Management, Inc., supra, we sustained the constitutionality of Section 193.461(4)(c), Florida Statutes (1973), which creates a presumption of nonagricultural use upon proof that this purchase price criterion has been met. The crucial distinction between the enactment before us and that in issue in Straughn, however, is that the latter statute enables the property owner to overcome the presumption of nonagricultural use by submitting evidence of "special circumstances" suggesting that the agricultural use will continue. Consequently, subsection (4)(c) of *485 Chapter 193 is in fact reasonably related to the legislative goal of granting preferential tax treatment only to property which is in fact being utilized for agricultural purposes as of the date of assessment. The failure of Section 193.461(4)(a)4 to contain a similar curative provision renders its test for eligibility for agricultural classification one of intended future use, rather than actual agricultural use as of the assessment date.
The legislative grant of the right of rebuttal to purchasers of property who come within the ambit of subsection (4)(c), supra, demonstrates that there is a reasonable alternative means of making the determination of whether platted land is continuing to be used for agricultural purposes, other than through the utilization of an irrebuttable presumption. It is no more arduous a task for the property appraiser to permit the property owner of platted land to submit evidence of continued agricultural use than it is to receive, as he does, similar evidence from the individual who has purchased property for more than three times its agriculturally assessed value. Consequently, Section 193.461(4)(a)4, Florida Statutes (1975), fails to satisfy the third prong of the due process test.
Appellants suggest that even if Section 193.461(4)(a)4 renders present agricultural use immaterial to the classification we must sustain the enactment because of our decision in Rainey v. Nelson, supra. We acknowledged in Rainey that the legislature is empowered to classify property as agricultural or nonagricultural according to criteria wholly unrelated to its present use and, indeed, that it may altogether remove the favorable ad valorem tax treatment which it has chosen to confer upon agricultural property. However, the legislature may not take such action in a manner which results in a denial of equal protection of the law. As we have noted, the legislature has generally elected to provide for the grant of an agricultural classification based upon actual use of the property as of the assessment date. Because the legislature has chosen to utilize this standard, equal protection prohibits it from singling out a class of property owners and classifying their land according to a standard different from that applied to other real property owners unless there exists a valid and substantial reason for this disparate treatment. See Rollins v. State, 354 So.2d 61 (Fla. 1978); State v. Blackburn, 104 So.2d 19 (Fla. 1958); Kelly v. Blackburn, 95 So.2d 260 (Fla. 1957); and Richey v. Wells, 123 Fla. 284, 166 So. 817 (1936). The requisite valid and substantial reason was present with regard to Section 193.461(4)(b), which we reviewed in Rainey, supra. Although that enactment permits the denial of an agricultural classification to land without regard to its present agricultural use, we held that it does not deny those within its ambit equal protection of the law. This is so because the public welfare is fostered by the removal of favored tax treatment from those lands, the continued agricultural use of which has ceased to serve the best interests of the community, by hindering its growth and development. The appellants here, however, have failed to show a constitutionally justifiable reason for applying other than a present use standard to those property owners who have done no more than file a subdivision plat. Because, as we have indicated, the act of platting, without more, is indicative only of the use which the taxpayer intends to make of the platted land in the future and those in appellee's class have been unreasonably singled out for classification under this disparate standard, we find that Section 193.461(4)(a)4, Florida Statutes (1975), effects a denial of equal protection of the law.
Due to our finding that Section 193.461(4)(a)4 is unconstitutional it is unnecessary for us to address the question of its purported conflict with Section 195.062, Florida Statutes (1975).
In summary, we hold (1) that classification of agricultural land for special tax treatment by utilization of a use standard is not compelled by Article VII, Section 4(a), Florida Constitution; (2) that, nonetheless, Section 193.461(4)(a)4, Florida Statutes (1975), inherently employs a use standard; (3) that it is unreasonable and constitutionally impermissible to presume conclusively from the recording of a subdivision plat *486 that the platted land is not presently being used primarily for good faith commercial agricultural purposes; and (4) that although the recording of a subdivision plat may support a conclusive presumption that the intended future use of the platted land will be nonagricultural, to single out this class of taxpayers from all others who are assessed on a present use criterion is so disparate as to deny them equal protection of the law.
Consequently, for the reasons expressed, the judgment of the Circuit Court for St. Lucie County, Florida, declaring Section 193.461(4)(a)4., Florida Statutes (1975), to be unconstitutional is affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD and OVERTON, JJ., concur.
HATCHETT, J., concurs in part and dissents in part with an opinion.
ALDERMAN, J., concurs in result only.
HATCHETT, Justice, concurring in part, dissenting in part.
I concur in that part of the majority opinion which holds this statute unconstitutional, but I dissent to that part which holds that classification of lands need not be based on character or use of the land.
In the first place, the majority should never have reached the classification question. That issue was not presented by the facts and therefore not ruled upon by the trial judge. Having addressed the issue, the majority adopts the wrong criteria for land classification under the constitution.
Article VII, section 4, Florida Constitution, provides:
By general law, regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation, provided:
(a) Agricultural land ... may be classified by general law and assessed solely on the basis of character or use.
My disagreement with the majority stems from its interpretation of this action. The majority believes that while agricultural assessment must be based on use, classification of agricultural land may be based on criteria wholly unrelated to use. First, the majority correctly notes that under this provision, the legislature may grant or withhold favorable tax treatment by not classifying any land as agricultural. Next, the majority reasons that since there is no "right" to the special treatment and since the determination of whether or not to classify "is a matter committed to the legislature," the legislature can classify land as agricultural or non-agricultural without regard to use. According to my colleagues, it is only the "assessment of agricultural land [which must] be based upon its character or use." To reach this conclusion, the majority recedes from our two most recent cases addressing this issue. Roden v. K & K Land Management, Inc., 368 So.2d 588 (Fla. 1978), and Straughn v. Tuck, 354 So.2d 368 (Fla. 1977). In both Roden and Tuck, we emphasized that use is "the guidepost in classifying land" and that "use is now and has always been the test." 368 So.2d at 589 and 354 So.2d at 370. As support for its position that assessment, but not classification, must be based on use, the majority relies upon Rainey v. Nelson, 257 So.2d 538 (Fla. 1972). In that case, this court upheld a statute permitting agricultural classification based on factors wholly unrelated to use of the land. The court there reasoned that:
... there is no deprivation of a property right in denying special tax treatment to this property owner since there is no "right" to the special treatment in the first instance. The only potential constitutional question here involves an equal protection issue, which can only be satisfied upon the showing of a valid exercise of the state's police power.
Id. at 539 (emphasis added).
The emphasized language discloses the flaw in the Rainey analysis. It does not follow that because the legislature has the option to extend favored treatment "in the first instance" it need not apply the constitutionally prescribed criterion once it has *487 determined to grant the preference. The phrase, "by general law," indicates only that the legislature has discretion in deciding whether or not to exercise the constitutional authority to classify land as agricultural. It does not, as the majority suggests, give the legislature the discretion to determine how the land shall be classified. Any doubt as to that discretion is removed by the final phrase in the provision and by the clear intent of the provision that any special tax treatment for agricultural land shall be based solely on the character or use of the land. I am not persuaded by the argument that the "character or use" requirement relates only to assessment but not to classification of land. Unless land is classified agricultural, it will never be eligible for the special assessment. If it is so classified, the special assessment follows. Under the majority's construction of the provision, the legislature could extend favored tax treatment to a select number of agricultural land owners by simply designing the classification in such a way as to exclude all others. I cannot concur with an opinion construing the provision to permit the legislature to circumvent its clear purpose. That purpose is to authorize favored treatment for agricultural land provided that any tax advantages shall result solely from the character or use of the land. By classifying land as agricultural or non-agricultural based on criteria wholly unrelated to use, the legislature can deny special tax treatment to those who are using their land for a bona fide agricultural purpose. I would therefore hold that classification as well as assessment must be based on character or use of the land. Accordingly, I would recede from Rainey and reaffirm our more recent holdings that use is the guidepost in classifying agricultural land. See Tuck and Roden.
Because section 193.461(4)(a)4. classifies land based on a factor wholly unrelated to use, I concur in the result of the majority opinion ruling the statute unconstitutional.
NOTES
[1] In each of the four suits filed by appellee the then current version of § 193.461(4)(a)4. was assailed. However, since the subsection in issue has remained unchanged during each of the relevant tax years, for the sake of clarity and convenience we shall refer to the most recent applicable provision, i.e., § 193.461(4)(a)4, Fla. Stat. (1975).
[2] A similar provision now appears as § 139.461(4)(b), Fla. Stat. (1977).
[3] Our recent decision in Roden v. K & K Land Management, Inc., 368 So.2d 588 (Fla. 1978), wherein we affirmed the above-quoted proposition enunciated in Straughn v. Tuck, supra, is also misleading in this respect. However, Roden involved a consideration of § 193.461(4)(c), Fla. Stat. (1975), which provides that the payment of a purchase price which is three or more times the agricultural assessment shall create a rebuttable presumption of nonagricultural use. Consequently, the recognition which we made in Straughn v. Tuck  that the test of classification is agricultural use  is indeed applicable to the statute in issue in Roden.
[4] This due process test of "reasonableness" is utilized to determine the constitutionality of irrebuttable presumptions which do not affect a constitutionality preferred right or privilege. Because, as we noted in Rainey v. Nelson, supra, there is no right to preferential ad valorem tax treatment for agricultural property, this is the proper test. When a constitutionally preferred right or privilege is in issue, however, the more stringent due process test is invoked and the irrebuttable presumption is deemed invalid "when [it] is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination." See Vlandis v. Kline, 412 U.S. 441, 452, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1973).