458 So.2d 1122 (1984)
William MARKHAM, As Broward County Property Appraiser, et al., Petitioners,
v.
E.C. FOGG, III, Allen S. Fogg, and Elizabeth Fogg Lane, Respondents.
No. 60759.
Supreme Court of Florida.
October 18, 1984.
Rehearing Denied December 12, 1984.
*1124 Gaylord A. Wood, Jr., Fort Lauderdale, and Jim Smith, Atty. Gen., and J. Terrell Williams, Asst. Atty. Gen., Tallahassee, for petitioners.
Clifford A. Schulman, Alan S. Gold and Timothy A. Smith of Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, Miami, for respondents.
William M. Barr of Raymond, Wilson, Conway, Barr, Burrows & Jester, Daytona Beach, amicus curiae for John W. Turner, Jr., as Volusia County Property Appraiser.
Ted R. Manry, III and Alton B. Parker of Macfarlane, Ferguson, Allison & Kelly, Tampa, amicus curiae for W.D. Daniel, Jr., as Hillsborough County Property Appraiser.
Stephen W. Metz, Robert M. Rhodes and Terry E. Lewis of Messer, Rhodes & Vickers, Tallahassee, amicus curiae for Florida Home Builders Ass'n.
PER CURIAM.
We review the opinion of the Fourth District Court of Appeal in Fogg v. Broward County, 397 So.2d 944 (Fla. 4th DCA 1981), which directly conflicts with Lauderdale v. Blake, 351 So.2d 742 (Fla. 3d DCA 1977), on the same point of law. We have jurisdiction, article V, section 3(b)(3), Florida Constitution. We quash the decision of the district court.
This is an agricultural classification case pertaining to the classification under section 193.461, Florida Statutes (1973)[1] of certain lands in Broward County for the years 1974 and 1975. Particularly, the litigation concerns the "Fogg Parcel" of 270 acres. Prior to 1974, the parcel was classified as agricultural land and taxed as such. On January 1, 1974, the Tax Assessor reclassified the property as nonagricultural and reassessed it. The landowners brought actions for declaratory judgment and injunctive relief to have their property classified and taxed as agricultural for 1974 and 1975. The trial court denied the relief sought and upheld the nonagricultural classification. The trial court found that the case was primarily controlled by section 193.461(4)(c) because there was a sale of land at a price more than three times the agricultural assessment and because the landowners had not provided sufficient evidence to rebut the presumption. In addition, the trial court found that the land had been rezoned to a nonagricultural use at the request of the owner as per section 193.461(4)(a)3. Finally, the trial court applied the criteria set forth in section 193.461(3)(b) *1125 and found that the landowners had not shown that the land was primarily being used for bona fide agricultural purposes.
The district court reversed. It held that section 193.461(4)(c) applied only to completed sales of realty and that the landowners, while having numerous contracts to sell the land, had not in fact sold the land. The court also held that the rezoning from agricultural to planned unit development did in fact occur but that such did not require the land to be reclassified as nonagricultural since agricultural use continued on the property pending its actual use as a development. Finally, the district court held that the evidence failed to support the trial court's finding that the land in question was not being used primarily for bona fide agricultural purposes.
The petitioners raise three issues on this appeal. First, they contend that the district court erred when it rejected the application of section 193.461(4)(c) to this case. That section, the "three times rule," creates a rebuttable presumption that the sale of land for a purchase price which is three or more times the agricultural assessment placed on the land shows that the land is not being used for bona fide agricultural purposes. The district court was correct in noting that the statutory language applies only to a completed sale and not mere contracts to sell. In the instant case, there was no completed sale.
The next point raised by petitioners concerns the issue left undecided by this court in Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173 (Fla. 1979). There, the constitutionality of section 193.461(4)(a)3 was brought up but because of the particular facts of that case the constitutional question was not addressed. Since the facts of the case sub judice squarely fall within the purview of that section, we must reach that issue now. It is incontrovertible that the section has been triggered because abundant evidence appears in the record to support the conclusion that the property was in fact rezoned even though the landowners argue that no rezoning has taken place. This was the conclusion of the trial court with which the district court concurred.
We have in the instant case land that has been rezoned to a nonagricultural use at the request of the owner subsequent to the enactment of the 1972 law. The statute specifically mandates that "[t]he assessor shall reclassify" land that has been rezoned to a nonagricultural use at the request of the owner. The language is mandatory and "is a clear legislative directive to the property appraisers of the state." 366 So.2d at 1175 (Boyd, J., dissenting). Unlike the above-mentioned section 193.461(4)(c) which allows the landowner to present evidence in opposition to the appraiser's reclassification, section 193.461(4)(a)3 is in the form of a mandatory presumption. We have stated that the test to determine the constitutionality of a mandatory presumption is three-fold:
[c]onstitutionality ... under the Due Process Clause must be measured by determining (1) whether the concern of the legislature was reasonably aroused by the possibility of an abuse which it legitimately desired to avoid; (2) whether there was a reasonable basis for a conclusion that the statute would protect against its occurrence; and (3) whether the expense and other difficulties of individual determinations justify the inherent imprecision of a conclusive presumption.
Bass v. General Development Corp., 374 So.2d 479, 484 (Fla. 1979). See also Gallie v. Wainwright, 362 So.2d 936 (Fla. 1978).
Concerning the first prong of this test, it is apparent that the legislature's concern was reasonably aroused by the possibility of land developers taking advantage of the agricultural classification provisions to minimize their holding costs prior to development. As to the second prong, the legislature could have concluded that since rezoning to a nonagricultural use was an obvious and necessary prerequisite to development, the statute in question would protect against the abuse of this special tax classification. As stated in Harbour Ventures:

*1126 Such an interpretation provides an incentive for agricultural lands to remain devoted to agricultural production by discouraging speculative rezoning.
366 So.2d at 1174 (emphasis supplied). Quite clearly, the statute proscribes speculative rezoning and hence is rationally related to the overall greenbelt purpose.
Moreover, this reasoning is not inconsistent with the view expressed in Bass where the related section 193.461(4)(a)4 was declared unconstitutional. That section was found to be infirm because there was no rational connection between the greenbelt purpose and that section's mandatory reclassification upon the occurrence of recording of a subdivision plat. We held then that the filing of a subdivision plat has little to do with the use of property. As related to that section, use was the standard against which to measure reasonableness. With the instant section, however, use is not the standard. Our Constitution does not mandate a use standard; instead, article VII, section 4(a), only says that "Agricultural land or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use." Our cases have held that in implementing that provision "the legislature has generally chosen to classify land on the basis of use rather than an implication that article VII, section 4(a) of our Constitution requires that result." Bass at 482 (emphasis supplied). Of note is the case of Rainey v. Nelson, 257 So.2d 538 (Fla. 1972), wherein we sustained a related legislative enactment that classified land as nonagricultural according to criteria completely unrelated to the actual use of the taxpayer's property. See also Lauderdale v. Blake, 351 So.2d 742 (Fla. 3d DCA 1977). Or, as noted in Harbor Ventures, "If the greenbelt law and the decisions interpreting it have established actual use of land as the general test for entitlement to the agricultural assessment, then clearly section 193.461(4)(a)3 constitutes a legislatively-mandated exception to that test." 366 So.2d at 1175 (Boyd, J., dissenting). Therefore, the instant section is rationally related to the legislative purpose and hence is proper.
As to the final prong of the test, the landowner has no right of rebuttal to the mandatory reclassification of the subject property. This is not fatal, however, because the instant statute can be read in pari materia with section 193.461(3)(b). After property has been reclassified under subsection (4)(a)3 as nonagricultural, the landowner is not precluded from presenting evidence under subsection (3)(b) to show that his property is indeed being used primarily for bona fide agricultural purposes. That latter subsection lists several factors that may be shown by the landowner and if sufficient, the property would then be classified agricultural. The procedure, in essence, would be the same as if subsection (4)(a)3 itself were rebuttable. For this reason, it clearly satisfies the third prong of the due process test.
Basically, this procedure is what the trial judge employed in the proceedings below. That judge determined that the landowners had not shown sufficient evidence to prove that the land in question was being used primarily for bona fide agricultural purposes for the years 1974 and 1975. As long as there is competent, substantial evidence to buttress this finding, an appeals court should not substitute its judgment for that of the trier of fact. Greenwood v. Oates, 251 So.2d 665 (Fla. 1971); Firstamerica Development Corp. v. County of Volusia, 298 So.2d 191 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 755 (Fla. 1975). Since the issue of whether the land was primarily being used for agricultural purposes is one of fact, the trial court's finding is clothed with a presumption of correctness. Since the evidence was conflicting, we find that there was ample credible evidence adduced at the trial to sustain the trial judge's findings. The district court was hence in error in overruling the trial court on this point.
The last issue merits but little discussion. Argument is made that the statute violates equal protection. However, the test under equal protection was *1127 highlighted in In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980):
The rational basis or minimum scrutiny test generally employed in equal protection analysis requires only that a statute bear some reasonable relationship to a legitimate state purpose. That the statute may result incidentally in some inequality or that it is not drawn with mathematical precision will not result in its invalidity. Rather, the statutory classification to be held unconstitutionally violative of the equal protection clause under this test must cause different treatments so disparate as relates to the difference in classification so as to be wholly arbitrary.
390 So.2d at 42. This Court has already recognized in Harbor Ventures that the legislature could have concluded the statute was rationally related to the legitimate state goal of minimizing and discouraging speculative rezoning. Harbor Ventures, 366 So.2d at 1174. The treatment afforded the instant landowners are not so disparate from others as to be wholly arbitrary.
We hold, therefore, that section 193.461(4)(a)3, applying to a situation where land zoned agricultural is changed to a nonagricultural zoning at the request of its owner, is constitutional and was proper as applied to the facts of this case. Accordingly, we quash the decision of the district court and instruct it to enter an order affirming the final judgment of the trial court.
It is so ordered.
ADKINS, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
BOYD, C.J., dissents.
NOTES
[1] The trial involved the application of sections 193.461(3)(b), (4)(a)3, and (4)(c). These statutes provide in relevant part as follows:

193.461 Agricultural lands; classification and assessment.
* * * * * *
(3)(b) Subject to the restrictions set out in this section, only lands which are used primarily for bona fide agricultural purposes shall be classified agricultural. "Bona fide agricultural purposes" means good faith commercial agricultural use of the land. In determining whether the use of the land for agricultural purposes is bona fide, the following factors may be taken into consideration:
1. The length of time the land has been so utilized;
2. Whether the use has been continuous;
3. The purchase price paid;
4. Size, as it relates to specific agricultural use;
5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and
7. Such other factors as may from time to time become applicable.
* * * * * *
(4)(a) The assessor shall reclassify the following lands as nonagricultural:
3. Land that has been zoned to a non-agricultural use at the request of the owner subsequent to the enactment of this law; or
* * * * * *
(4)(c) Sale of land for a purchase price which is three or more times the agricultural assessment placed on the land shall create a presumption that such land is not used primarily for bona fide agricultural purposes. Upon a showing of special circumstances by the landowner demonstrating that the land is to be continued in bona fide agriculture, this presumption may be rebutted.