# IN RE: PETITION OF CAROL MANAGEMENT CORPORATION

## Agenda No. 5073 (Folio Nos. 30-3018-00-0010 and 30-3018-00-0020)

Property Appraisal Adjustment Board, Dade County, Florida

January 22, 1988

## APPEARANCES OF COUNSEL

**Robert A. Ginsburg,** County Attorney, and **Daniel A. Weiss,** Assistant County Attorney, for the Property Appraiser.

**Alan T. Dimond** for petitioner.

## OPINION OF THE COURT

MALCOLM B. WISEHEART, JR., Special Master.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATIONS

THIS MATTER came on to be heard before the undersigned as Special Master for the Property Appraisal Adjustment Board (sometimes referred to herein as "PAAB") for Dade County, Florida, and having heard the testimony of the witnesses and having considered the Petitioner's memorandum of October 16, 1987, as well as the memoranda dated September 28, 1987, and November 25, 1987, both submitted by the Property Appraiser, it appears that the uncontested facts are as follows:

### FINDINGS OF FACT

1. The Petitioner is CAROL MANAGEMENT CORPORATION who is the owner of the subject parcels.

2. The subject parcels consist of 615.5 acres situated in Section 18, Township 53, and Range 40 East in Dade County, Florida, and located between N.W. 58th and 74th Streets and between 107th and 117th Avenues.

3. There is no history of prior agricultural classification with respect to the subject property.

4. Prior to January 1, 1987, the entire property was enclosed by four miles of perimeter fencing and two and one-half miles of interior cross-fencing.

5. As of the assessment date, the entire property was leased to Mr. Thomas Lopez, a professional farmer, for the exclusive purpose of cattle ranching. Mr. Lopez conducted his farming activities in anticipation of making a profit and, in fact, did realize a profit from the cattle grazing activities performed on the subject property.

6. The Petitioner filed with the Property Appraiser in timely fashion an application for agricultural classification for the year 1987.

7. The Property Appraiser granted agricultural classification with respect to 274.760 acres (property zoned GU) (General Use) but denied the Petitioner's application with respect to 340.740 acres zoned RU-1 (Single Family Residential District), RU-TH (Townhouse District), RU-L4 (Limited Apartment House District), BU-2 (Special Business District) and IU-2 (Industrial, Heavy Manufacturing District). The Property Appraiser advanced no reason for his denial other than the zoning in question.

8. The Petitioner filed with the Property Appraisal Adjustment

Board in timely fashion a Petition to review the denial of agricultural classification.

## CONCLUSIONS OF LAW

This is another of the many cases heard by this Board which involves the relationship between zoning and agricultural classification for Florida ad valorem tax purposes.

### Legal Background

Prior to the Florida Supreme Court's decision in *Markham v. Fogg,* 458 So.2d 1122 (Fla. 1984), it was clear that the relationship between zoning and agricultural classification was basically two-fold.

On one hand, where the taxpayer requested and obtained a change of zoning to a nonagricultural use subsequent to the enactment of Florida Statutes § 193.461(4)(a)3, it was thought, prior to *Fogg,* that the subject property had to be permanently classified as nonagricultural for purposes of ad valorem taxation. Otherwise stated, prior to *Fogg,* where there had been an owner-requested change in zoning to a nonagricultural use, there was an irrebuttable presumption that the taxpayer was not entitled to agricultural classification. After all, the statute in question clearly provided (and still provides) as follows:

> The Property Appraiser shall re-classify the following lands as non-agricultural:
>
> . . . . . . . . . . . .
>
> (3) Land that has been zoned to a nonagricultural use at the request of the owner subsequent to the enactment of this law. Florida Statute § 193.461(4)(a)3.

As more fully discussed below, it was this aspect of the relationship between zoning and agricultural classification that was modified considerably by the Florida Supreme Court's decision in *Fogg.*

The second aspect of the two-fold relationship between zoning and agricultural classification concerns the situation where there has been no owner-requested change in zoning to a nonagricultural use. Here, both before and after *Fogg,* the role of zoning in determining agricultural classification has not been particularly important. Nonagricultural zoning has never given rise to any particular presumption, rebuttable or irrebuttable. It has been simply one factor, among others, to be considered by the Property Appraiser.

The Florida Legislature did not choose to give any special emphasis to the role of the zoning, apart from the narrow circumstances contemplated by Florida Statutes § 193.461(4)(a)3. Indeed, the Florida

Legislature did not even refer to "zoning" in setting out the statutory factors to be considered by the Property Appraiser in classifying lands as agricultural or nonagricultural for ad valorem tax purposes. Florida Statutes § 193-461(3)(b) provides that lands which are used primarily for bona fide agricultural use shall be classified as agricultural and lists the following factors to be considered by the Property Appraiser in determining whether use of the land for agricultural purposes is bona fide:

1. The length of time the land has been so utilized;

2. Whether the use has been continuous;

3. The purchase price paid;

4. Size, as it relates to specific agricultural use;

5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;

6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and

7. Such other factors as may from time to time become applicable.

As pointed out above, conspicuously absent is any explicit mention of "zoning". "Zoning" enters the list of permissible factors to be considered by the Property Appraiser, only through the "back-door" of the general "catch-all" category of "such other factors as may from time to time become applicable." Florida Statutes § 193.461(3)(b)7.

Nor has "zoning", as such, played a particularly prominent role in the decided cases as a factor to be considered in determining agricultural classification. Thus, in the leading case of *Greenwood v. Oates,* 251 So.2d 665 (Fla. 1971), the Florida Supreme Court suggested that the tax authorities might properly consider the following among other factors:

(a) Opinions of appropriate experts in the fields;

(b) Business or occupation of the owner;

(c) The nature of the terrain of the property;

(d) Economic merchantability of the agricultural products; and

(e) The reasonably attainable economic salability of the product within a reasonable future time for the particular agricultural product.

41

See, also, Department of Revenue Regulation 12D-5.04(1), from which the above synopsis of *Greenwood v. Oates, supra,* is taken. Again, "zoning", as such, simply did not make the list.

Zoning, as a general factor and apart from the special circumstances contemplated by § 193.461(4)(a)3, comes to us basically as sub-paragraph two (2) of the Department of Revenue Regulation 12D-5.04, referred to above. There, zoning as a general factor is mentioned. Department of Revenue Regulation 12D-5.04(2) provides specifically as follows:

Other factors which are recommended to be considered are:

(a) Zoning (other than § 193.461(4)(a)3) applicable to the land.

Even when mentioned in Department of Revenue Regulation 12D-5.04(2), however, "zoning" as a general factor shares the limelight, presumably on equal footing, with the following other factors to be considered:

(b) General character of the neighborhood;

(c) Use of adjacent properties;

(d) Proximity of subject properties to a metropolitan area and services;

(e) Principal domicile of the owner and family;

(f) Date of acquisition;

(g) Agricultural experience of the person conducting agricultural operation;

(h) Participation in governmental or private agricultural programs or activities;

(i) Amount of harvest of each crop;

(j) Gross sales from the agricultural operation;

(k) Months of hired labor; and

(l) Inventory of buildings and machinery and the condition of same.

Thus, "zoning", as a general factor, and apart from the special circumstances contemplated by Florida Statutes § 193.461(4)(a)3, has never been afforded a particularly prominent role in determining agricultural classification; it has merely been one of the many factors which should be considered.

Accordingly, where lands which were clearly in bona fide commercial agricultural use were denied agricultural classification by the Property Appraiser of Dade County solely because of nonagricultural zoning and in circumstances where Florida Statutes § 193.461(4)(a)3

42

did not apply, this Board has not hesitated to overrule the Property Appraiser's determination as clearly wrong. See, *e.g., In Re: Petition of Missell Invest. Corp.*, 9 Fla.Supp. 2d 177 (PAAB Dade Co. 1984). The Property Appraiser simply may not use "zoning", or any other single factor, as the sole criterion for determining agricultural classification. See, *Czagas v. Maxwell*, 393 So.2d 645 (5th DCA 1981). See also *Roden v. K & K Management, Inc.*, 368 So.2d 588 (Fla. 1978).

Thus, prior to *Fogg*, the relationship between "zoning" and agricultural classification was basically two-fold. Where the Property Appraiser could point to nonagricultural zoning in the circumstances contemplated by Florida Statutes § 193.461(4)(a)3, he could be confident that denial of agricultural classification would be, without more, sustained. See, *e.g., Lauderdale v. Blake*, 351 So.2d 742 (3d DCA 1977). On the other hand, however, where Florida Statutes § 193.461(4)(a)3 did not apply, the rule was more favorable to the taxpayer; the Property Appraiser could not lawfully deny agricultural classification solely on the basis of nonagricultural zoning. This two-fold or two-tier set of legal principles governed the relationship between "zoning" and agricultural classification until the Florida Supreme Court's decision in *Fogg*.

### The Picture Fogged

At the time of its decision in *Markham v. Fogg, supra,* the Florida Supreme Court had already declared unconstitutional Florida Statutes § 193.461(4)(a)4 which directed the Property Appraiser to reclassify as non-agricultural lands for which the owner had recorded a subdivision subsequent to the enactment of the statute. *Bass v. General Development Corp.*, (Fla. 1979) 374 So.2d 479. In *Bass*, the Supreme Court made clear that the objectionable feature of the statute in question was that it created a *conclusive* or irrebuttable presumption that the land in question was not being used for bona fide agricultural purposes. 374 So.2d at 485-486.

The similarity between the statute declared unconstitutional in *Bass* and Florida Statutes § 193.461(4)(a)3 was apparent and it was thought that Florida Statutes § 193.461(4)(a)3 might not escape the same fate. In *Fogg*, however, the Supreme Court treated Florida Statutes § 193.461(4)(a)3 in a different fashion; it *upheld* the validity of the statute but in so doing determined that the statute should be read *in pari materia* with Florida Statutes § 193.461(3)(b). That statute, it will be recalled, sets forth the seven factors which are normally to be considered in determining whether land is in bona fide commercial agricultural use.

43

After *Fogg,* it is clear that the presumption created by Florida Statutes § 193.461(4)(a)3 can, indeed, be rebutted by recourse to the usual analysis based upon the seven factors set out in Florida Statutes § 193.461(3)(b); and if Florida Statutes § 193.461(4)(a)3 creates only a rebuttable presumption, one wonders what, as a practical matter, is really left of the statute at all, at least from the point of view of the Property Appraisal Adjustment Board. After all, as the Property Appraiser has reminded us both in his oral and written presentations, *all* determinations made by the Property Appraiser come to the Board clothed with a presumption of correctness. *Bystrom v. Whitman,* 488 So.2d 520 (Fla. 1986); Rule 12D-10.003, Fla. Admin. Code. See, *e.g., Straughn v. Tuck,* 354 So.2d 368, 371 (Fla. 1978); *Bystrom v. Hotelerama Associates, Ltd.,* 511 So.2d 640, 641 (3d DCA 1987). Since the Property Appraiser is already entitled to a presumption of correctness in every proceeding before the Board, it is unclear what additional advantage is to be given now to the Property Appraiser when denial of agricultural classification is based upon Florida Statutes § 193.461(4)(a)3. In rescuing the statute from constitutional attack, it appears that the Florida Supreme Court all but abolished it. If not actually "self-contradictory" (see *Lackey v. Little England,* 461 So.2d 281 (5th DCA 1985) at 282), *Fogg* at least reduced the two-fold or two-tier set of legal principles previously governing the relationship between zoning and agricultural classification into one—namely, the one most favorable to the taxpayer.

The Proposed Revolution; "Good Faith" as the Absence of Illegality

Comes now the Property Appraiser of Dade County, Florida, and proposes a brand new and revolutionary theory—one not considered by us in *Missell Investment Corp.* by the Florida Supreme Court in *Fogg;* and one which, like *Fogg,* compresses the two-fold or two-tier set of traditional principles into one—however, into the one most favorable to the Property Appraiser.

The Property Appraiser's argument is clear, simple and direct and one which takes us back to the text of the basic statute itself, namely, Florida Statutes § 193.461(3)(b). The first step of the Property Appraiser's argument is to note that Florida Statutes § 193.461(3)(b) provides that ". . . only lands which are used for bona fide agricultural purposes shall be classified as agricultural." The same statute goes on to provide:

"Bona fide agricultural purposes" means good faith commercial agricultural use of the land.

While the statute then proceeds to list the familiar seven factors which

44

may be taken into consideration in determining whether the use of land for agricultural purposes is "bona fide", the Property Appraiser goes back to the concept of "good faith" as alluded to above but not itself developed or amplified in the rest of the statutory text. The Property Appraiser then develops his own exegesis with respect to the term "good faith". Drawing from numerous sources of law unrelated to ad valorem taxation and relying heavily upon notions of equity, the Property Appraiser contends that the concept of "good faith" is basically inconsistent with "illegality". Since agricultural use of land is "illegal" where not permitted by zoning, actual agricultural activity "in defiance" of the applicable zoning regulations cannot be deemed to be in "good faith commercial agricultural use" and therefore the subject parcels cannot qualify for the requested agricultural classification.

The Property Appraiser's legal argument is an intellectual *tour de force.* By *defining* the term "good faith commercial agricultural use" in such fashion as to exclude agricultural activities where not permitted by zoning, the Property Appraiser simply posits the legal result for which he contends and thereby forecloses the taxpayer from any rebuttal. By dint of the Property Appraiser's argument, "non-agricultural zoning" inverablly results in an "irrebuttable presumption" in favor of denial of agricultural classification not only when Florida Statutes § 193.461(4)(a)3 is applicable, but whenever agricultural use is not permitted by zoning. Thus, the effect of the Property Appraiser's argument is not only to reverse the *Fogg* decision, as the Petitioner complains in its well argued brief, but to take us 180 degrees in the opposite direction.

Moreover, the Property Appraiser's argument, if accepted, could take us even further afield. The underlying major premise of the argument, after all, is that "good faith" is inconsistent with "illegality", not merely or necessarily activities rendered illegal by zoning regulations. Thus, the farmer who uses a prohibited pesticide, the farmer who employs an undocumented field hand, and the farmer who transports his produce to market in a truck having an expired license tag, could all arguably be said to be engaged in "illegal" activities, and, by the same logic now urged by the Property Appraiser, the lands which such farmers tend could be denied agricultural classification by the Property Appraiser—all without an opportunity for the taxpayer to rebut the Property Appraiser's determination. Does "good faith commercial agricultural use" really require that the farmer be "without sin"?

The Settled Law; "Good faith" as meaning "actual" or "without deception"

There is another meaning which can be ascribed to "good faith",

**45**

namely, "actual" or "without deception". This is the meaning according to the settled law of this State and therefore the meaning which should recommend itself to the Board. Florida Statutes § 193.461(3)(b) equates "good faith commercial agricultural purposes" with "bona fide agricultural purposes". "Bona fide" for the purposes of Florida Statutes § 193.461(3)(b) has, in turn, been judicially defined as follows:

> The term "bona fide" as used in the statute imposes the requirement that the agricultural use be real, actual, of a genuine nature—as opposed to sham or deception. *Hausman v. Rudkin,* 268 So.2d 407, 409 (4th DCA 1972), quoted with approval in *Bystrom v. Union Land Inv.,* 477 So.2d 585, 587 (3d DCA 1985).

The construction given the term "bona fide" above is consistent with the growing number of cases that point to "actual use" as the ultimate guidepost in determining agricultural classification. *Straughn v. Tuck,* 354 So.2d 368 (Fla. 1978); *Fisher v. Schooley,* 371 So.2d 496 (Fla. 2d DCA 1979); and *Roden v. K & K Land Management, Inc.,* 368 So.2d 588 (Fla. 1978).

The same construction of the term "good faith" is also supported by examination of the legislative purpose and intent of Florida Statutes § 193.461(3)(b). As the Petitioner aptly points out, the purpose of all of Florida's "greenbelt laws" has been to encourage agricultural production and to help preserve agricultural lands. If "good faith" is construed to mean "absence of illegality" agricultural production could be *discouraged;* if "good faith" means simply "actual", agricultural production is invariably *encouraged.* After all, Mr. Lopez' cows are presumably unaware of and indifferent to the changes in zoning they encounter as they graze from one part of the subject parcel to another and the agricultural products that are derived from them enter into the stream of commerce in the same quantity and quality whether or not agricultural use is theoretically permitted by the applicable zoning with respect to all of the land in question. Generally, as a rule of statutory construction, if a statutory term is susceptible of two meanings, one of which will give effect to the statute and the other of which will defeat it, the former construction is preferred. See, *Florida Jurisprudence 2d, Statutes* § 178.

The Property Appraiser has emphasized that the Petitioner is in the land development business, that the subject land is adjacent to other properties owned by the Petitioner which have already been developed, and that the subject parcels have had no prior history of agricultural use. These are all factors which should properly alert the Property Appraiser to the need to scrutinize the alleged agricultural use in order

46

to ensure that no sham or deception has been perpetrated and that the taxpayer is truly entitled to the preferential tax classification claimed. When the Property Appraiser makes such careful inquiry into the claimed agricultural use, as he has done here, the Property Appraiser clearly performs a valuable function; however, when the land is then found to be in actual agricultural use, as it was in this case, the Property Appraiser's legitimate inquiry is at an end and the land should be afforded the classification to which the taxpayer is entitled. It is not for the Property Appraiser to withhold the classification and tax treatment which the legislature has provided merely because the benefits accruing to the taxpayer appear large or even disproportionate with regard to the presumed value of the agricultural enterprise.

Much of the remainder of the Property Appraiser's argument consists of appropriate reminders to us that taxpayers who seek exemptions or preferential tax classifications bear a heavy burden of proof and that determinations made by the Property Appraiser are entitled to a presumption of correctness before the PAAB. The undersigned has been privileged to hear hundreds of agricultural classification cases for the Dade County PAAB over a period in excess of ten (10) years and no one could have any more respect for the competency and fairness of Mr. Jacques Victor, who testified in these particular proceedings and who made the initial determination on behalf of the Property Appraiser. The *facts* of this case, however, are *uncontested* and no presumption requires the Board to accept uncritically the *legal* argument advanced on behalf of the Property Appraiser, when such legal argument cannot be reconciled with the settled law of Florida as expounded by our courts. Here, the Property Appraiser has candidly acknowledged that the sole legal authority for his argument consists of an unreported Circuit Court case from another judicial district. As we said in *Missell Investment Corp.*:

> [T]he Property Appraisal Adjustment Board of Dade County is simply an administrative agency, subject to the supervisory jurisdiction of the Circuit Court of the Eleventh Judicial Circuit, the Court of Appeal for the Third District and the Florida Supreme Court. Accordingly, it should govern itself strictly and literally by the pronouncements of those Courts as well as the rules and regulations of the Florida Department of Revenue.

> . . . . . . . . . . .

> [I]t has no business anticipating future developments in the law. *In Re: Petition of Missell Invest. Corp., supra,* 180.

If the revolution which the Property Appraiser urges is to take place, it

should be led by someone other than the Property Appraisal Adjustment Board of Dade County.

Summarizing, the undersigned concludes as follows:

1. The term, "good faith", as used in the phrase, "good faith commercial agricultural use" means "actual" or "without deception" within the context of Florida Statutes § 193.461(3)(b).

2. The existence of non-agricultural zoning, standing alone, does not negate "good faith commercial agricultural use".

3. As of January 1, 1987, the Petitioner was engaged in "good faith commercial agricultural use", namely, cattle ranching, with respect to all of the subject properties.

4. The Petitioner is entitled to agricultural classification on the basis of cattle ranching with respect to all of the subject properties.

## RECOMMENDATIONS

Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following recommendations to the full Property Appraisal Adjustment Board:

1. That the Property Appraiser be upheld to the extent agricultural classification has previously been granted with respect to the subject parcels.

2. That the Property Appraiser be overruled with respect to the extent agricultural classification has previously been denied with respect to the subject parcels.

3. That agricultural classification be granted to both of the subject parcels in their entirety on the basis of cattle ranching.

4. That the assessments, agricultural differentials and nonexempt portions of the assessment for the following folios be finally established for the year 1987 as follows:

| Folio Number | Prior Assessment | Agricultural Adjustment | Non-Exempt Portion |
|---|---|---|---|
| 30-3018-000-0010 | 2,652,000 | 2,536.832 | 115,168 |
| 30-3018-000-0020 | 7,549,913 | 7,221.559 | 328,354 |

5. That the Office of the Dade County Tax Collector be apprised of the foregoing and that, if the 1987 tax bills have not been paid, they be recalculated in a manner consistent with the foregoing and that if they have been paid in accordance with the Property Appraiser's previous determinations, that the Office of the Dade County Tax Collector be ordered to recalculate and reissue the said tax bills and to issue

48

appropriate refunds upon presentment of the Petitioner's receipted tax bills.

6. That the costs of filing the Petitions with the Property Appraisal Adjustment Board be refunded to the Petitioner by the Clerk.

DONE at Miami, Dade County, Florida, this 22nd day of January, 1988.