671 So.2d 197 (1996)
Astley HALL, Appellant,
v.
RECCHI AMERICA INC. and Palmer & Cay Carswell, Appellees.
No. 94-2714.
District Court of Appeal of Florida, First District.
March 19, 1996.
Rehearing Denied April 24, 1996.
*198 Jack J. Weiss, Miami, and Randy D. Ellison, West Palm Beach, for appellant.
Robert L. Teitler of Walton, Lantaff, Schroeder & Carson, Miami, for appellees.
DAVIS, Judge.
Appellant, Astley Hall, appeals an order of the judge of compensation claims (JCC) denying his workers' compensation claim solely on the basis that he had a positive drug test shortly after his accident at the employer's drug-free workplace. The JCC based the denial of benefits upon the conclusive presumption of section 440.09(3), Florida Statutes (1991), that an injury in a drug-free workplace to an employee who has positive confirmation of a drug shall be presumed to have been occasioned primarily by the intoxication of the employee. The JCC did not find, however, that marijuana ingestion by appellant primarily caused the injury. Because section 440.09(3), Florida Statutes (1991), establishes an irrebuttable or conclusive presumption which violates the constitutional right to due process, we reverse.
Recchi America established its drug and alcohol policy on April 1, 1991, nine months after the effective date of the workers' compensation drug-free workplace statutes, and three months after passage of the enabling division rules. See §§ 440.09(3), 440.09(7), 440.101, 440.102, Fla.Stat. (1991); Ch. 38F-9, Fla.Admin.Code. Their program included *199 notice, education and testing for drug abuse. The employer's policy statement explained:
In the interest of promoting a safer, healthier and more productive environment, Recchi America, Inc., has adopted the policy that all employees must be drug free in the workplace. That is, employees must be free from detectable amounts of controlled substances, other mind altering substances or their metabolites without regard to apparent impairment.
Prior to employment, prospective employees are given an employment package with an acknowledgement and acceptance statement and a general policy statement as to the purpose and intent behind the program, specific prohibitions and consequences under the policy, educational requirements, drug/alcohol screening policies and procedures, and specimen testing and search requirements. Their policy provides that any employee, chosen at random, may be required to submit to drug/alcohol screening upon request. It further provides that employees in job classifications that have a direct impact on the safety of themselves or others may be tested "on an indiscriminate basis." The policy also provides for testing based upon reasonable suspicion, defined to include "involvement in an accident which results in injury to the employee or a fellow employee or which causes property damage." Recchi America tests all employees involved in an accident.
The claimant worked for eight years with three different construction companies before joining Recchi America in May 1991. On May 20, 1991, he executed the employer's drug policy documents whereby he agreed to a pre-employment drug and alcohol screening and to random and/or indiscriminate screening for drugs and alcohol. He gave a urine sample at the time of his hiring that tested negative for each of the drugs screened by the lab. The policy documents explained that an employee could be terminated from his employment if he refused to take a test or tested positive for drugs or alcohol. The documents also indicated: "[i]n cases of injury, this will also mean a forfeiture of employee's eligibility for all medical and indemnity benefits."
On the morning of Thursday, June 13, 1991, three weeks after commencing work, the claimant and a co-worker were doing concrete form work. They were carrying a screed (a long steel apparatus) over their heads when the claimant's co-worker tripped over a steel form work and jabbed the screed into the back of the claimant's head. The claimant offered unrefuted testimony that he did nothing to cause the accident.
After his supervisor appeared on the scene, the claimant was taken to the Workers' Compensation Medical Center. Dr. Alan Yurkiewicz, the treating physician, testified that the claimant was alert, oriented and responsive. Dr. Yurkiewicz diagnosed a contusion to his head, a mild cervical strain, and a 4.5 centimeter laceration to his scalp that required 15 stitches to close. Dr. Yurkiewicz testified from his notes that he detected no altered consciousness or state of mind. He testified within a reasonable medical probability that all of the claimant's symptoms came from the blow to the head.
The claimant provided a urine sample for drug testing within 30 minutes of arriving at the Workers' Compensation Medical Center. Recchi America directed that the urine sample be sent to National Health Laboratories for analysis. Initially the claimant's urine was subject to immunoassay antibody reaction testing. See Fla.Admin.Code R. 59A-24.006(4)(e). The test result was two percent above the 100 nanogram per milliliter positive cut-off for marijuana metabolites. A confirmatory gas chromatography/mass spectrography analysis showed a 78 nanograms per milliliter level. See Fla.Admin.Code R. 59A-24.006(4)(f). The gas chromatography/mass spectrography test has a lower positive threshold due to a different extraction process. The claimant admitted he had smoked marijuana five days earlier on June 8, 1991, and maintained he had only smoked marijuana four or five times in the last fifteen years.
Dr. Jay Poupko, who holds a Ph.D. in pharmacology and is a member of the University of Miami School of Medicine, Department of Pharmacology, does research in toxicology. He explained that, unlike alcohol, marijuana and other drugs are usually measured *200 in the urine rather than in the blood stream. Urine tests are inherently incapable of determining whether there is an active drug present in the individual. Dr. Poupko testified that the 78 nanograms per milliliter of inactive metabolite found in the claimant's urine was entirely consistent with the claimant having smoked marijuana five days before the accident as the claimant claimed. He explained that a person who smokes marijuana remains impaired for only four to six hours after ingestion of the drug. Based upon Dr. Poupko's testimony, the JCC found it probable that the claimant was not, at the time of the injury, impaired from marijuana ingestion.
In denying all benefits, the JCC concluded, "the Legislature intended to deny workers' compensation benefits to any employee who chooses to engage in drug use where their employer has implemented a drug-free workplace." In this appeal, the claimant maintains that the workers' compensation drug-free workplace statutes facially violate the Federal and Florida Constitutions by encouraging indiscriminate, suspicionless searches. He further argues that the irrebuttable presumption of causation provided in section 440.09(3), which results in forfeiture of workers' compensation benefits, violates due process and equal protection.
We hold that section 440.09(3), Florida Statutes (1991), establishes an irrebuttable or conclusive presumption which violates the constitutional right to due process. Section 440.09(3), provides, in pertinent part:
No compensation shall be payable if the injury was occasioned primarily by the intoxication of the employee ... If there was at the time of the injury 0.10 percent or more by weight of alcohol in the employee's blood, or if the employee has a positive confirmation of a drug as defined in this act, it shall be presumed that the injury was occasioned primarily by the intoxication of, or by the influence of the drug upon, the employee. In the absence of a drug-free workplace program, this presumption may be rebutted by clear and convincing evidence that the intoxication or influence of the drug did not contribute to the injury ...[1]
Under the plain language of this statute, the presumption that the injury was occasioned primarily by the intoxication or influence of drugs is rebuttable when there is no drug-free workplace program in place, and is irrebuttable when such a program has been properly instituted. A presumption is conclusive if a party is not given a reasonable opportunity to disprove either the predicate fact or the ultimate fact presumed. City of Coral Gables v. Brasher, 120 So.2d 5, 9 (Fla. 1960); Chandler v. Department of Health & Rehabilitative Servs., 593 So.2d 1183 (Fla. 1st DCA 1992). In this instance it is the ultimate fact, that the injury was primarily occasioned by intoxication or the influence of drugs, that the claimant is being foreclosed from disproving.
The constitutionality of a conclusive presumption under the due process clause is measured by determining (1) whether the concern of the legislature was reasonably aroused by the possibility of an abuse which it legitimately desired to avoid; (2) whether there was a reasonable basis for a conclusion that the statute would protect against its occurrence; and (3) whether the expense and other difficulties of individual determinations justify the inherent imprecision of a conclusive presumption. Markham v. Fogg, 458 So.2d 1122, 1125 (Fla.1984); Bass v. General Dev. Corp., 374 So.2d 479, 484 (Fla.1979).
As to the first prong of the due process test, the concern of the legislature regarding drug use in the workplace is reasonable. Section 440.101, Florida Statutes (1991), provides that "[i]t is the intent of the Legislature to promote drug-free workplaces in order that employers in the state be afforded the opportunity to maximize their levels of productivity, enhance their competitive positions in the marketplace, and reach their desired levels of success without experiencing the costs, delays, and tragedies associated with work-related accidents resulting from drug abuse by employees." As to the *201 second prong of the due process test, there is a reasonable basis to conclude that the statute would deter drug use in the workplace. Section 440.101 provides that it is "the intent of the Legislature that drug abuse be discouraged and that employees who choose to engage in drug abuse face the risk of unemployment and the forfeiture of workers' compensation benefits."
The conclusive presumption contained in section 440.09(3) fails, however, to satisfy the third prong of the due process test. Because of the high potential for inaccuracy of the conclusive presumption set forth in section 440.09(3), and the feasibility of individualized determinations, fact finding on an individualized basis must be required to afford the employee due process. The conclusive presumption that "it shall be presumed that the injury was occasioned primarily by the intoxication of, or by the influence of the drug upon, the employee" if the employee has a positive confirmation of a drug as defined in section 440.102, may be erroneous. A positive confirmation of a drug at the time of the industrial injury does not conclusively establish that the industrial accident was causally related to the intoxication of, or the influence of the drug upon, the employee. The lack of a causal relationship between a positive drug test and the industrial accident is readily apparent in the present case because the uncontradicted testimony established that the industrial accident was not the fault of the claimant, but rather resulted from a co-worker tripping and jabbing him in the back of the head with a screed that he and the co-worker were carrying.
Additionally, the imprecision of the presumption of intoxication or influence of a drug upon the employee when urine testing is employed was established in the present case through the testimony of Dr. Poupko, a pharmacologist. Dr. Poupko testified that urine testing is inherently incapable of determining whether the active drug was present in an individual at the precise time of the injury. Rather, urine testing measures drug metabolites, which implies nothing about the presence of the active drug in the blood at the relevant time. In the case of marijuana, the drug used by the claimant, Dr. Poupko testified that urine testing measures an inactive metabolite, which has no effect on the nervous system. Dr. Poupko testified that the concentration of inactive metabolite found in the claimant's urine was entirely consistent with his having smoked marijuana five days before the industrial accident, as contended by the claimant. Dr. Poupko explained that an individual who smokes marijuana remains impaired for only four to six hours following ingestion of the marijuana. The JCC relied upon Dr. Poupko's testimony in concluding that it was probable that the claimant was not impaired from the ingestion of marijuana at the time of the industrial accident. Nevertheless, because section 440.09(3) creates an irrebuttable presumption that the industrial injury was occasioned primarily by the intoxication of, or by the influence of the drug upon, the employee when the employee has a positive confirmation of a drug as defined in section 440.102, the JCC concluded that the claimant's claim was not compensable. These findings and conclusions clearly support our conclusion that the presumption contained in section 440.09(3) must be rebuttable to survive due process analysis.
Because section 440.09(3) fails to allow rebuttal of the presumption that the industrial accident was causally related to the intoxication or influence of a drug upon the employee if the employer has a drug-free workplace program in effect, the conclusive presumption set forth in section 440.09(3) results in a denial of due process. The unconstitutionality of that one presumption, however, does not render all of the workers' compensation drug-free workplace provisions defective. In determining whether parts of a statute are severable from the remainder of the law, the court must look to the relationship between the unconstitutional provisions and the overall legislative intent. The court must then evaluate whether the remaining provisions of the statute continue to accomplish that intent. See Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311, 317 (Fla.1984), appeal dismissed mem., 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985). The workers' compensation drug-free workplace statutes are designed to accomplish twin goals: discouraging drug *202 abuse and maximizing industrial productivity by eliminating "the costs, delays, and tragedies associated with work-related accidents resulting from drug abuse by employees." § 440.101, Fla.Stat. (1991). The remaining provisions of this statute will serve those goals even if the irrebuttable presumption is excised. For example, an employer instituting a drug-free workplace must provide education and notice which should discourage drug abuse. It is also clear that requiring a causal nexus between the drug abuse and the work-related accident will do nothing to detract from the legislative goal of eliminating such accidents attributable to such cause. We therefore hold that section 440.09(3) is severable from the remainder of the law.
Accordingly, the order of the JCC is reversed and remanded for further proceedings using the constitutionally legitimate rebuttable presumption.
BARFIELD, J., concurs.
KAHN, J., concurs with written opinion.
KAHN, Judge, concurring.
I agree completely with the analysis and conclusion reached by Judge Davis. I would also note that the result in this case is completely consistent with my understanding of Florida's workers' compensation system.
A basic premise of workers' compensation law in Florida, as in other places, has always been to release society of the expenses of injuries caused by industry in favor of a program under which industry would bear such costs. Whitehead v. Keene Roofing Co., 43 So.2d 464 (Fla.1949). The purpose of our Act is "to provide for employers a liability that is limited and determinative, and to employees a remedy that is both expeditious and independent of proof of fault." Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 209 (Fla. 1st DCA 1981). The legislation now at hand abrogates these long-accepted understandings, at least in a class of cases, including Mr. Hall's. Despite the apparent fact that Hall's injury was caused completely by risks normally attendant to the construction industry, he would be left without any remedy under the Workers' Compensation Act. Thus, the limited statutory provision we invalidate today was itself at odds with a central premise of compensation law. Moreover, it directly contravenes the intent of our legislature recently set out in the 1993 revisions to the workers' compensation law: "[W]orkers' compensation cases shall be decided on their merits." § 440.015, Florida Statutes (1994 Supp.).
NOTES
[1] Prior to the 1990 legislation promoting the creation of drug-free workplace programs, it was presumed, in the absence of substantial evidence to the contrary, that the injury was occasioned primarily by the intoxication of the employee. See § 440.09(3), Fla.Stat. (1989).