GERBER, J.
 

 This appeal presents the question of whether a statute allowing the Board of
 
 *87
 
 Medicine to discipline a physician who performs a wrong-site procedure violates the physician’s right to due process by allegedly including an irrebuttable presumption that performing a wrong-site procedure falls below the standard of care. Finding no such presumption or constitutional violation, we affirm.
 

 The Department of Health filed an administrative complaint with the Board of Medicine against orthopedic surgeon Leon Jay Abram, M.D., alleging that Abram, by performing a surgical procedure on a patient’s T3 vertebra level rather than the intended T4 level, violated section 456.072(l)(aa), Florida Statutes (2004) (emphasis added):
 

 (1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2) may be taken:
 

 [[Image here]]
 

 (aa) Performing or attempting to perform health care services on the wrong patient,
 
 a wrong-site procedure,
 
 a wrong procedure, or an unauthorized procedure or a procedure that is medically unnecessary or otherwise unrelated to the patient’s diagnosis or medical condition ....
 

 Abram filed an election of rights indicating that he did not dispute the Department’s allegations of fact, but requested an informal hearing before the Board to submit mitigation evidence. Although the election of rights form gave Abram the opportunity to dispute the allegations of fact and request a formal hearing before an administrative law judge, Abram did not exercise that option.
 

 The Department scheduled a hearing before the Board and provided notice thereof to Abram. At the hearing, the Board adopted the Department’s allegations as the findings of fact. The Board then provided Abram an opportunity to be heard through counsel concerning legal argument or mitigating evidence. Abram’s counsel argued that Abram did not deviate from the standard of care, yet the Department was seeking to discipline him. Abram’s counsel therefore asked the Board to exercise its discretion and dismiss the charges. The Department’s counsel responded that it had not charged Abram with a standard of care violation, but rather a wrong-site procedure violation. Abram’s counsel replied that disciplining Abram for a wrong-site procedure while he was practicing within the standard of care essentially would impose strict liability against him.
 

 The Board voted to accept the administrative complaint’s legal conclusion that Abram violated section 456.072(l)(aa). One of the Board members then asked whether the Board could accept the legal conclusion and still dismiss the case based on mitigating factors. The chair responded that the Board could consider those factors during the penalty phase. The Board’s counsel added that the Board could accept the findings of fact and conclusions of law but not impose any penalty. However, the Board’s counsel added:
 

 You know, this whole issue is an interesting issue, and it may be an issue that may be taken up on appeal someday and an appellate court may tell us otherwise. You know, I think at this point in time, the way the law is written, I think you are obligated to find a wrong, you know, a wrong site procedure occurred under these circumstances, and again, you know, an appellate court may say someday, you’re wrong, you have to look at the standard of care issue also. And if that day comes, then I think at that point in time it’d be appropriate to do it. But, in these type [sic] of case right now, you know, what type of penalty you
 
 *88
 
 want, being that this is an informal proceeding you have to look at you’re [sic] disciplinary guidelines and see what your disciplinary guidelines say for the minimum penalty.
 

 One of the Board members then moved for a letter of concern and costs, which motion another member amended to add a one-hour lecture. The Board voted to approve the motion.
 

 The Board entered a final order adopting the administrative complaint as the Board’s findings of fact and conclusions of law and held that the violation warranted disciplinary action. The order also noted several mitigating circumstances, including that Abram immediately notified the patient and the patient’s family of the wrong-site procedure, the patient did not suffer any harm, Abram self-reported the incident to the hospital, and the patient’s anatomy complicated the procedure. The order directed that the Board issue a letter of concern, that Abram present a one-hour lecture to the hospital medical staff on wrong site surgery, and that Abram pay the Department’s costs. Abram appealed the final order to this court.
 

 “The standard of review of an agency decision based upon an issue of law is whether the agency erroneously interpreted the law and, if so, whether a correct interpretation compels a particular action.”
 
 Fla. Hosp. v. Agency for Health Care Admin.,
 
 823 So.2d 844, 847 (Fla. 1st DCA 2002). As the Legislature delegated to the Board the power to enforce section 456.072(l)(aa), we are required to be highly deferential to the Board’s interpretation of such statute.
 
 Id.; see also Verizon Fla., Inc. v. Jacobs,
 
 810 So.2d 906, 908 (Fla.2002) (“An agency’s interpretation of the statute it is charged with enforcing is entitled to great deference.”). “However, a court need not defer to an agency’s construction or application of a statute if special agency expertise is not required, or if the agency’s interpretation conflicts with the plain and ordinary meaning of the statute.”
 
 Fla. Hosp.,
 
 823 So.2d at 848. Without such deference, “[t]he courts of this state have consistently held that judicial interpretation of statutes and determinations concerning the constitutionality of statutes are pure questions of law subject to the de novo standard of review.”
 
 State v. Sigler,
 
 967 So.2d 835, 841 (Fla.2007).
 

 Below and in his initial brief, Abram acknowledged the Board’s interpretation that section 456.072(l)(aa) essentially creates strict liability for performing a wrong-site procedure. However, Abram argued that the Board’s interpretation was unconstitutional as applied to him because it denied him due process. Specifically, Abram claimed that the statute raises an irrebuttable presumption that, because Abram performed a wrong-site procedure, he deserves to be disciplined regardless of whether his actions met the standard of care. In response, the Department contends that interpreting the statute as requiring a standard of care element, or as including a standard of care presumption, would conflict with the statute’s plain meaning. The Department adds that, even if the statute includes an irrebuttable presumption that a wrong-site procedure falls below the standard of care, the statute remains constitutional as applied.
 

 We agree with the Department that section 456.072(l)(aa)’s plain meaning does not include a presumption that a wrong-site procedure falls below the standard of care. The statute makes no mention of the standard of care, and many of the thirty-plus actions constituting section 456.072(1) violations have nothing to do with a patient’s care. Abram has not cited any authority supporting his assumption that the Legislature included a wrong-site procedure as a section 456.072 violation
 
 *89
 
 because it presumed a wrong-site procedure falls below the standard of care.
 

 Even if section 456.072(l)(aa) included an irrebuttable presumption that a wrong-site procedure falls below the standard of care, the statute would remain constitutional as applied. “The constitutionality of a conclusive presumption under the due process clause is measured by determining (1) whether the concern of the legislature was reasonably aroused by the possibility of an abuse which it legitimately desired to avoid; (2) whether there was a reasonable basis for a conclusion that the statute would protect against its occurrence; and (3) whether the expense and other difficulties of individual determinations justify the inherent imprecision of a conclusive presumption.”
 
 Hall v. Recchi Am., Inc.,
 
 671 So.2d 197, 200 (Fla. 1st DCA 1996). As to the first and second prongs, the concern of the Legislature regarding wrong-site procedures is reasonable, and there is a reasonable basis to conclude that the statute would deter wrong-site procedures. As to the third prong, the expense and other difficulties of individual determinations regarding the standard of care would justify a conclusive presumption. Medical negligence trials often last several days, if not weeks, and necessarily include both sides presenting costly “standard of care” experts. The possibility of the Department, a state agency, being required to expend limited taxpayer resources in every wrong-site procedure case to prove a physician fell below the standard of care would justify a conclusive presumption (if one existed).
 

 In deciding this case, we would be remiss if we did not express our reservations regarding the origin from which this case has arisen, that is, the Board’s interpretation that section 456.072(l)(aa) creates strict liability for performing a wrong-site procedure, and Abram’s acknowledgement of that interpretation as the springboard for his due process argument. The statute’s language, italicized below, plainly suggests a different interpretation. Subsection (1) states: “The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2)
 
 may
 
 be taken:.... ” Subsection (2) states, in pertinent part: “When the board ... finds any person guilty of the grounds set forth in subsection (1) ... it
 
 may
 
 enter an order imposing one or more of the following penalties:.... ” Below and in their briefs, the parties wholly have ignored the Legislature’s use of the permissive word “may” in subsection (1) regarding the taking of disciplinary actions, and in subsection (2) regarding the imposition of penalties. If the Board had construed the statute as permissive rather than mandatory, the outcome of this case may have been different.
 
 See Ayala v. Dep’t of Prof. Regulation,
 
 478 So.2d 1116, 1117-18 (Fla. 1st DCA 1985) (construing statute as permissive rather than mandatory required Board of Medical Examiners to consider evidence in deciding appellant’s guilt or innocence of disciplinary charges).
 

 Because Abram did not contest the Board’s interpretation of the statutory language below or in his initial brief, that issue is not before us today. We raise the issue at this time to prevent readers of this opinion from assuming we agree with the premise underlying this case that section 456.072(l)(aa) creates strict liability. That issue remains for another day.
 

 Affirmed.
 

 FARMER and HAZOURI, JJ., concur.