FARMER, J.
 

 The City appeals a refusal by the Division of Retirement of the Department of Management Services to distribute to the City certain revenues from a fund derived from a tax on casualty insurance written on property within its borders. We affirm the final order of the agency.
 

 In 1953, the Legislature enacted statutory provisions for police (and, later, firefighter) pensions. The statute authorized cities to assess an excise tax on casualty insurance for property within the city, the revenues from which could go to the existing police officer retirement trust fund.
 
 See now
 
 § 185.08, Fla. Stat. (2009). The statute contained minimum benefit requirements and imposed limitations on municipal use of the tax revenue generated thereby within the city for police pensions.
 
 See now
 
 § 185.06(2), Fla. Stat. (2009) (permissible investments); § 185.16 (age of eligibility, minimum benefit calculation, vesting requirements); § 185.161 (optional forms of retirement benefits). These statutes established a board of trustees in every such municipality, including a specified number of serving police officers, to govern and manage this police retirement trust fund. Over the years, the Legislature has amended chapter 185 from time to time, altering minimum benefit criteria and limitations on the use of such funds.
 

 
 *964
 
 Pertinent to this appeal, in 1995 the Legislature adopted the following statute creating a “premium tax trust fund” for these police (and firefighter) pensions:
 

 “The Police and Firefighters’ Premium Tax Trust Fund is created, to be administered by the Division of Retirement of the Department of Management Services.
 
 Funds credited to the trust fund, as provided in chapter 95-250, Laws of Florida, or similar legislation, shall be expended for the purposes set forth in that legislation.”
 
 [e.s.]
 

 § 185.105 Fla. Stat. (2009);
 
 see also
 
 § 175.1215 Fla. Stat. (2009); and Ch. 95-249, § 1, Laws of Fla.
 

 In 1999 the Legislature enacted new legislation to “provide a uniform retirement system for the benefit of police officers as hereinafter defined.... ”
 
 See
 
 § 41, Ch. 99-1, Laws of Fla. Included in the omnibus legislation enacted with that statement of purpose was the following provision:
 

 “Any board of trustees operating a local law plan on July 1, 1999, which is combined with a plan for general employees
 
 shall hold an election of the police officers,
 
 or police officers and firefighters if included,
 
 to determine whether a plan is to be established for police officers only, or for police officers and firefighters where included.
 
 Based on the'election results, a new board shall be established as provided in subparagraph 1. or sub-paragraph 2., as appropriate. The municipality shall enact an ordinance to implement the new board by October 1, 1999. The newly established board shall take whatever action is necessary to determine the amount of assets which is attributable to police officers, or police officers and firefighters where included. Such assets shall include all employer, employee, and state contributions made by or on behalf of police officers, or police officers and firefighters where included, and any investment income derived from such contributions. All such moneys shall be transferred into the newly established retirement plan, as directed by the board.” [e.s.]
 

 § 185.05(l)(b)3, Fla. Stat. (2009). The new legislation further provided:
 

 “In order for a municipality and its retirement fund to participate in the distribution of premium tax moneys under this chapter,
 
 all the provisions shall be complied with annually,
 
 including state acceptance pursuant to part VII of Chapter 112.” [e.s.]
 

 § 185.10(2), Fla. Stat. (2009);
 
 see also
 
 § 185.35, Fla. Stat. (2009) (requiring local law plans to meet the requirements and standards in chapter 185). Finally, the legislature has specified that municipal participation in the premium tax program is not mandated but is instead purely voluntary:
 

 “A municipality may revoke its participation under this chapter by rescinding the legislative act, or ordinance which assesses and imposes taxes authorized in s. 185.08, and by furnishing a certified copy of such legislative act, or ordinance to the division. Thereafter, the municipality shall be prohibited from participating under this chapter, and shall not be eligible for future premium tax moneys.”
 

 § 185.60, Fla. Stat. (2009) (entitled
 
 Optional
 
 participation).
 

 Several years before 1999, the City, of Wilton Manors had established its General Employees and Police Officers Retirement Plan. It is a defined benefits plan combining both general municipal employees and its police officers.
 
 [1]
 
 The City also exer
 
 *965
 
 cised its authority to assess and impose an excise tax against casualty insurers covering property within the City limits. The taxes generated are collected by the State Department of Revenue and transferred to the Police and Firefighters’ Premium Tax Trust Fund and there administered by the Division of Retirement. For the years preceding 1999, the premium taxes collected from casualty insurers were remitted by the Division to the City of Wilton Manors and there used to fund retirement benefits to be paid from its combined plan to both police officers and all other city employees entitled to retirement benefits.
 

 In April 1999, the Division notified the City and the board of trustees of the combined plan that, to continue to receive benefits under the new law, an election of police officers must be held to detach police officers from the combined plan into a plan covering police officers only. The notice cited § 185.05(l)(b)3. The City of Wilton Manors has refused to hold such an election since that notice was sent. Its local law plan (defined benefits retirement) continues to pay benefits from its trust funds to both general municipal employees as well as police officers. The City of Wilton Manors declines to establish a separate retirement plan only for police officers (which may also include firefighters) from the combined local law plan. It refuses thus to amend the combined plan to limit it to employees other than police officers (and firefighters).
 

 In November 2000, the Division informed the City that it was withholding the City’s share of the premium tax revenue for the year 1999 because the City’s combined plan no longer complied with the chapter 185 requirements set forth above. The Division advised that it understood the 1999 legislation to provide that combined plans covering both general employees and police officers do not conform to the statutory requirements for sharing in the premium tax revenue. Since that year the Division has also taken the same position for the revenues in the succeeding years.
 

 The City sought and was granted a formal hearing to contest the agency action. Ultimately the case was tried to an administrative law judge (ALJ) who entered a recommended order. In sum, the ALJ found essentially the foregoing facts. As to the applicable law, the ALJ concluded that the failure to hold an election and separate police from the combined local plan did not authorize the Division to withhold premium tax revenues from the City for the years since the 1999 statutes were enacted. The ALJ’s recommended order would require that the City’s share of the premium tax revenues withheld for the subject years be distributed to the City as before and continued to be used to fund the combined plan.
 

 On review of the recommended order, the Division rejected only finding of fact number 6,
 
 [2]
 
 essentially objecting only to the use of the term “forfeited” to describe the consequence of failing to hold the election provided by § 185.05(l)(b)S. But the agency rejected several of the ALJ’s conclusions of law. It concluded that the 1999 legislation established that combined plans would no longer be eligible to receive any
 
 *966
 
 premium tax revenues, that those municipalities with combined plans must allow their police (and firefighters as well) to vote to detach their retirement plan from the combined plan, so that a separate plan solely for police (and firefighters) could continue to receive premium tax revenues. The Division further concluded that the 1999 legislation effectively made those combined plans not making such a separation no longer eligible to receive premium tax revenues. It is that decision that has been appealed by the City.
 

 The issue on this appeal is ultimately one of interpretation of a statutory scheme. Review is thus de novo.
 
 [3]
 

 The Florida Constitution allows the Legislature to create a tax and distribute the revenue from it to local governments. Art. VII, § 8, Fla. Const. (1980) (“State funds may be appropriated to the several counties, school districts, municipalities or special districts upon such conditions as may be provided by general law”). The Legislature is also empowered to limit the governmental and corporate power of municipalities by statute. Art. VIII, § 2(b), Fla. Const.
 

 Because we are reviewing an agency’s interpretation of the law it is charged with enforcing, we must recognize that:
 

 “an agency’s interpretation of a statute it is charged with enforcing is entitled to great deference. The party challenging an order of the Commission bears the burden of overcoming those presumptions by showing a departure from the essential requirements of law.”
 
 [4]
 

 As the supreme court has also phrased such required agency deference:
 

 “we note the well established principle that the contemporaneous construction of a statute by the agency charged with its enforcement and interpretation is entitled to great weight. The courts will not depart from such a construction unless it is clearly unauthorized or erroneous.”
 
 [5]
 

 We must therefore review the Division’s construction of chapter 185 with these important principles of review in mind.
 

 Construction of a specific statute is not served by isolating it from the rest of the body of statutory law. The meaning of specific phrasing in a statute may seem odd by itself, but its true import may become apparent when viewed in the context of other statutes touching and concerning the subject of the statute.
 

 The critical text here is:
 

 “Any board of trustees operating a local law plan on July 1, 1999, which is combined with a plan for general employees
 
 shall hold an election of the police officers, or police officers and firefighters if included, to determine whether a plan is to be established for police officers only, or for police officers and firefighters where included.”
 
 [e.s.]
 

 § 185.05(l)(b)8. Fla. Stat. (2009). There can be no misunderstanding as to the text
 
 *967
 
 in bold above. The words
 
 shall hold an election
 
 are not permissive but mandatory. The purpose of the requirement to “hold[ ] an election” may seem odd but it is not ambiguous.
 

 On the other hand, the statutory scheme adopted in 1999 manifests an obvious purpose to allocate premium tax revenues solely to police retirement plans, thereby prohibiting intermingling them in combined local law plans. That new tax revenue allocation policy obviously necessitates changing local law plan terms and provisions in those cities having combined such plans.
 

 Although none of the statutes expressly state that the failure to separate police pension plans from other municipal employee plans will result in the loss of eligibility to share in the premium tax revenues, that is patently the only conclusion that seems to fit the specific provisions enacted. It does not appear, therefore, that the Division’s interpretation of the 1999 legislation is anything but coherent with the entire body of law affecting the eligibility of municipal police retirement plans to receive premium tax revenues.
 

 Also, we know that municipal participation in the premium tax revenues is not mandatory; a City may take itself out of the program at any time. See § 185.60, (entitled
 
 Optional
 
 participation). We know also that chapter 185 now specifies that the premium tax revenue must be expended only for the purposes specified in chapter 185 — that is, only for local law plans providing police retirement pension trust benefits. § 185.105. We know further that “for a municipality and its retirement fund to participate in the distribution of premium tax monies under chapter 185, all the provisions [of chapter 185] shall be complied with annually.” § 185.10. And it is indisputable that, after the 1999 legislation became effective, all municipalities with combined local law pension plans— including the City of Wilton Manors — were required to have their police officers vote on whether the police pension should be separated from the combined local law plan. § 185.05(l)(b)3. If combined local law plans could continue to remain eligible for premium tax revenues, there would be no apparent purpose for requiring municipal police to decide whether to have a separate local law plan for police only.
 

 The record suggests that the City of Wilton Manors decided voluntarily not to separate its local law plan into two plans (a new one for police and firefighters, and the original for all other employees) for simple fiscal reasons. Its City Manager testified in the formal hearing that the City had estimated the costs to administer two separate plans and concluded that the premium tax revenues would not offset the additional administrative costs.
 

 The AL J did not seem to understand the legal authorities in the same way Division of Retirement does. Rather, the ALJ seemed fixed upon semantics in the sentence about holding an election and thus to search for other constructions based on assumed ambiguity. On the other hand, the agency obviously understood the import of the new statute.
 

 It is clear that the following policy of review applies to the final agency action in this case:
 

 “[T]he ultimate authority to
 
 administratively
 
 interpret chapter 447 and article I, section 6, of the Florida Constitution, which deal with state regulation of labor organizations, resides with [PERC] and not a hearing officer. [PERC] has the principal responsibility of interpreting the statutory provisions consistent with the legislature’s intent and objectives. We also agree that [PERC] has the authority to overrule a statutory interpretation made by one of its hearing
 
 *968
 
 officers. Further, we agree that a reviewing court must defer to an agency’s interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence.” [c.o.]
 

 Pub. Employees Relations Comm’n v. Dade County Police Benevolent Ass’n,
 
 467 So.2d 987, 989 (Fla.1985). In this instance, where related employment consequences intersect with the authority of the Division of Retirement to interpret and administer the laws respecting the distribution of premium tax revenues only to
 
 eligible
 
 local law retirement plans, the Division stands in the same shoes as PERC did in
 
 Dade County Police Benevolent.
 
 The Division’s interpretation of § 185.05(l)(b)3. is harmonious with its plain text and the surrounding body of law affecting the same subject.
 
 Affirmed.
 

 WARNER and POLEN, JJ., concur.
 

 [1]
 

 . No one disputes that the City of Wilton Manors combined plan is a "local law plan”
 
 *965
 
 as that term is defined in § 185.02(10), Fla. Stat. (2009), and used throughout chapter 185.
 

 [2]
 

 . "The Division interpreted (and continues to understand) [§ 185.05(l)(b)3] as requiring municipalities, such as the City, whose combined local law plans as of July 1, 1999, covered both general employees and police officers (or police officers and firefighters)
 
 only, i.e.
 
 no general employees included — or forfeit the opportunity to continue receiving distributions of the premium tax revenue.”
 

 [3]
 

 .
 
 Abram v. State of Fla., Dep’t of Health, Bd. of Med.,
 
 13 So.3d 85, 88 (Fla. 4th DCA 2009).
 

 [4]
 

 .
 
 Gulf Coast Elec. Co-op. Inc. v. Johnson,
 
 727 So.2d 259, 262 (Fla.1999);
 
 AmeriSteel Corp. v. Clark,
 
 691 So.2d 473, 477 (Fla.1997);
 
 see also Morris v. Div. of Ret.,
 
 696 So.2d 380, 384 (Fla. 1st DCA 1997) ("Even if somehow problematic, 'an agency's interpretation of a statute it is charged with enforcing is entitled to great deference.' ").
 

 [5]
 

 .
 
 PW Ventures Inc. v. Nichols,
 
 533 So.2d 281, 283 (Fla.1988);
 
 U.S. Gypsum Co. v. Green,
 
 110 So.2d 409, 414 (Fla.1959);
 
 Gay v. Canada Dry Bottling Co. of Fla.,
 
 59 So.2d 788, 790 (Fla.1952);
 
 see also Warnock v. Fla. Hotel & Rest. Comm’n,
 
 178 So.2d 917 (Fla. 3d DCA 1965).