Ciklin, C.J.
In 2014, prior to the primary election for the office of Florida Attorney General, Perry Thurston submitted documents to the Division of Elections (“the Division”) in an attempt to meet the threshold required to qualify for state matching funds from the Election Campaign Financing Trust Fund. The Division rejected some of the documents—photocopies of checks—because necessary information contained on the face of the documents could not be read. The Division notified Thurston of the legibility problems after he was eliminated as a candidate in the primary election. In response, he submitted new, legible photocopies of the required documents, which the Division declined to review.
In this appeal, Thurston challenges the Division’s decision not to review his corrected documentation to determine whether Thurston had met the qualifying threshold, and the Florida Election Commission’s (“the FEC”) affirmance of that decision. Because the relevant statutes and administrative rules do not impose a deadline on curing defective paperwork submitted pri- or to a primary election in support of a request for matching funds, we reverse and remand to the Division to process Thurston’s request for certification.
In November 2013, Thurston filed his appointment of campaign treasurer and designation of campaign depository related to his candidacy for Florida Attorney General. The primary election was scheduled for August 26, 2014. In June 2014, Thur-ston filed with the Division a request for matching funds pursuant to section 106.33, Florida Statutes.[1]
By e-mail dated August 7, 2014, Thur-ston’s representative submitted to the Division two financial reports for 2013 and two for 2014. By email dated August 15, 2014, Thurston’s representative submitted “missing matching funds documentation,” which he requested be included in “[Thurston’s] matching funds report.” The documents comprised proof of financial contributions which were required to be reported by June 27 and July 25 in order to avoid a delay in disbursement of the funds. On August 21, in response to an inquiry from Thurston’s representative, the Division informed the Thurston campaign that it could not disburse matching funds because the submissions were untimely and he had not submitted “verifiable documentation establishing he had received at least $100,000 in eligible contributions.”
The following day, August 22, Thur-ston’s representative e-mailed documents to the Division, which he asserted would establish that the campaign had met the $100,000 threshold to be certified eligible for matching funds. Based on the looming primary election, the Division accelerated the verification process. Upon completion of the verification process on August 25, the Division determined that “[t]he verifiable documentation supported receipt of only $99,251.70 in eligible contributions.” Further, there were claimed contributions that could not be considered for various *686 reasons, including “No Documentation,” “Not a Florida Resident,” “Occupation not specific,” “Invalid Signature,” and “Incomplete/Improper Documentation.”
On August 26, 2014, the primary election was held and Thurston was defeated. The next day, the Division informed Thurston’s campaign that he had not met the requirements for certification. Relevant to this appeal, five contributions were disallowed because the portion of the checks containing the contributors’ names and addresses had been turned down during the photocopying process so that the complete names and addresses could not be read.
By letter dated October 14, 2014, Thur-ston’s representative renewed the campaign’s request for disbursement of matching funds. New, legible, photocopies of the five checks were attached to the letter.
The Division confirmed its receipt of the corrected photocopies of the checks but declined to certify Thurston’s eligibility to receive matching funds. No reason was provided in the letter for the Division’s decision. On appeal, the FEC affirmed.
On appeal to this court, Thurston argues that Florida’s Election Campaign Financing Act does not provide for disallowance of contributions merely because deficiencies in the paperwork submitted to qualify for matching contributions were not cured until after a candidate was eliminated as a candidate. The FEC argues that by the time Thurston submitted documentation purporting to show that he had raised $100,000 in qualifying contributions, he was no longer a candidate and thus the Division lacked statutory authority to certify his eligibility to receive matching funds.
The issue on appeal is a purely legal one, namely the interpretation of the statutes and administrative rule that apply to the distribution of matching campaign funds. “The standard of review of an agency decision based upon an issue of law is whether the agency erroneously interpreted the law and, if so, whether a correct interpretation compels a particular action.” Abram v. State, Dep’t of Health, Bd. of Med., 13 So.3d 85, 88 (Fla. 4th DCA 2009) (quoting Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 847 (Fla. 1st DCA 2002)).
The relevant statutes are contained in Chapter 106, Florida Statutes (2014). Sections 106.30-106.36, Florida Statutes, are known as the Florida Election Campaign Financing Act (“the Act”). § 106.30. Section 106.32 establishes an Election Campaign Financing Trust Fund. The Legislature provided its intent in enacting the Act:
The Legislature finds that the costs of running an effective campaign for statewide office have reached a level which tends to discourage persons from becoming candidates and to limit the persons who run for such office to those who are independently wealthy, who are supported by political committees representing special interests which are able to generate substantial campaign contributions, or who must appeal to special interest groups for campaign contributions. The Legislature further finds that campaign contributions generated by such political committees are having a disproportionate impact vis-a-vis contributions from unaffiliated individuals, which leads to the misperception of government officials unduly influenced by those special interests to the detriment of the public interest. Furthermore, it is the intent of the Legislature that the purpose of public campaign financing is to make candidates more responsive to the voters of the State of Florida and as insulated as possible from special interest groups. The Legislature intends ss. 106.30-106.36 to alleviate these factors, dispel the misperception, and encourage *687 qualified persons to seek statewide elective office who would not, or could not otherwise do so and to protect the effective competition by a candidate who uses public funding.
§ 106.31.
Section 106.38 provides that to be eligible for matching funds, a candidate for the office of Governor or member of the Cabinet, “upon qualifying for office, shall file a request for such contributions with the filing officer on forms provided by the Division of Elections.” The statute further provides that a candidate for a Cabinet office must not be “an unopposed candidate as defined in s. 106.011.” § 106.33. A candidate for Cabinet office must agree to abide by the expenditure limits provided by law, and must raise $100,000. § 106.33(l)-(2). Contributions from individuals who are not state residents may not be used to meet the $100,000 threshold. § 106.33(2)(b).
“Candidate” is defined as “a person to whom any of the following applies:”
(a) A person who seeks to qualify for nomination or election by means of the petitioning process.
(b) A person who seeks to qualify for election as a write-in candidate.
(c) A person who receives contributions or makes expenditures, or consents for any other person to receive contributions or make expenditures, with a view to bring about his or her nomination or election to, or retention in, public office.
(d) A person who appoints a treasurer and designates a primary depository.
(e) A person who files qualification papers and subscribes to a candidate’s oath as required by law.
§ 106.011(3), Fla. Stat.
“Unopposed candidate” is defined as follows in pertinent part:
[A] candidate for nomination or election to an office who, after the last day on which a person, including a write-in candidate, may qualify, is without opposition in the election at which the office is to be filled or who is without such opposition after such date as a result of a primary election or of withdrawal by other candidates seeking the same office.
§ 106.011(18).
Section 106.36(1), Florida Statutes, provides that the “division shall review each request for contributions from the Election Campaign Financing Trust Fund and certify whether the candidate is eligible for such contributions. Notice of the certification decision shall be provided to the candidate.” § 106.35(1) (footnote omitted). The statute further provides as follows in pertinent part:
(3)(a) Certification and distribution of funds shall be based on contributions to the candidate reported to the division for such purpose. The division shall review each report and verify the amount of funds to be distributed prior to authorizing the release of funds. The division may prescribe separate reporting forms for candidates for Governor and Cabinet officer.
(b) Notwithstanding the provisions of s. 106.11, a candidate who is eligible for a distribution of funds based upon qualifying matching contributions received and certified to the division on the report due on the 4th day prior to the election, may obligate funds not to exceed the amount which the campaign treasurer’s report shows the candidate is eligible to receive from the Election Campaign Financing Trust Fund without the funds actually being on deposit in the campaign account.
*688 (4) Distribution of funds shall be made beginning on the 32nd day prior to the primary and every 7 days thereafter.
(5) The division shall adopt rules providing for the weekly reports and certification and distribution of funds pursuant thereto required by this section.
§ 106.35(3)-(5) (footnote omitted).
Section 106.07(1), Florida Statutes, provides that campaign contribution and expenditure reports shall be filed “on the 10th day following the end of each calendar month,” or the next day that is not a weekend day or holiday. Reports must also be filed by statewide candidates “[o]n the 60th day immediately preceding the primary election, and each week thereafter, with the last weekly report being filed on the 4th day immediately preceding the general election.” § 106.07(l)(a)l., Fla. Stat. Additionally, statewide candidates must file reports “[o]n the 10th day immediately preceding the general election, and each day thereafter, with the last daily report being filed the 6th day immediately preceding the general election.” § 106.07(l)(a)2.
Rule 1S-2.047, Florida Administrative Code, governs the distribution of matching funds. The rule provides the following timetable for distributions:
(2) Distribution of Funds.
(a) State matching funds shall be distributed to eligible candidates beginning on the 32nd day prior to the primary election and every 7 days thereafter. Distributions are based on verified matching contributions as shown on campaign finance reports, required to be filed by Section 106.07(l)(a), F.S., listing the contributions received after September 1 of the calendar year prior to the election.
(b) Funds shall be distributed as follows:
1. The first distribution of funds is based on campaign finance reports required to be filed on or before the 60th day before the primary election.
2. The second distribution of funds is based on campaign finance reports required to be filed after the 60th day but no later than the 32nd day prior to the primary election.
3. Each subsequent distribution of funds will be based on the prior week’s timely filed report or reports.
4. Distributions of funds based on untimely documentation or reports, amended reports, or supplemental documentation will be distributed no later than the weekly cycle occurring three weeks after receipt of such documentation or report.
Fla. Admin. Code R. lS-2.047(2). The rule further provides that reports of contributions are timely for purposes of matching funds only if filed “no later than 12:00 Noon (Eastern Time), on the date it is due.” Id. R. lS-2.047(3)(a). A report filed after the 12:00 Noon deadline, “will be deemed late for matching fund purposes and any eligible matching funds will be distributed as provided in subparagraph (2)(b)4. of this rule.” Id. R. lS-2.047(3)(b). Further:
Reports of contributions filed by candidates requesting matching funds must include all information required by Sections 106.07 and 106.30-.36, F.S. If information related to a matchable contribution is missing, incomplete, or cannot be verified, no match will be made for that contribution and the Division will notify the candidate. Upon the Division’s receipt and verification of the missing or incomplete information, matching funds will be distributed as provided in sub-paragraph (2)(b)4. of this rule.
Id. R. lS-2.047(3)(c).
The rule provides the following with respect to documentation, in pertinent part:
*689 (4) Documentation.
(a)l.Documentation for each contribution report must satisfy the requirements of this rule to permit verification of the applicable contribution on the campaign finance report for which matching funds are requested.
2. Documentation for each contribution report is timely if it is received by the Division no later than 12:00 Noon (Eastern Time) on the date the report is due.
3. If documentation for such report is received by the Division after 12:00 Noon (Eastern Time) on the due date, the documentation will be deemed late for matching fund purposes and any eligible matching funds will be distributed as provided in subparagraph (2)(b)4. of this rule.
4. Documentation for the first distribution must be received by the Division on or before the 60th day prior to the primary election.
5. Documentation for the second distribution must be received by the Division on or before the 32nd day prior to the primary election.
6. Documentation for subsequent distributions must be received weekly by the Division each Friday.
7. If documentation for a report is untimely, any eligible matching funds will be distributed as provided in subpara-graph (2)(b)4. of this rule.
[[Image here]]
(c) In order to verify contributions, the Division must receive the following documentation:
1. For a contribution made by check or cashier’s check, a copy of the check or cashier’s check;
[[Image here]]
(d) Documentation that does not conform to the specifications in this paragraph will not be processed and the Division will notify the candidate. Upon the Division’s receipt and verification of documentation that is in compliance with these specifications, matching funds will be distributed as provided in subpara-graph (2)(b)4. of this rule.
Id. R. lS-2.047(4).
Because a statute controls the distribution of matching funds, the starting point for our analysis is the language of the statute. See Smith v. Crawford, 645 So.2d 513, 522 (Fla. 1st DCA1994) (relying on language of campaign finance statutes to determine whether contributions to a candidate’s campaign for Commissioner of Agriculture had to be applied to his campaign for a different office after he withdrew his candidacy for Governor, so that his total expenditures would exceed that allowed to be eligible for public campaign financing). If the statute’s language “is susceptible to more than one interpretation,” legislative history may provide guidance. Id. at 524 (emphasis omitted) (quoting Magaw v. State, 537 So.2d 564, 566 (Fla. 1989)).
The statute and rule do not explicitly address the situation that arose here. But the administrative rule does provide for the distribution of matching funds in the event of untimely filed financial reports and documentation. See Fla. Admin. Code R. lS-2.047(2)(b)4., (3)(b), (4)(a)7. To the extent any of Thurston’s reports or documentation were untimely filed, his distributions would be delayed to “no later than the weekly cycle occurring three weeks after receipt of such documentation or report.” Id. R. lS-2.047(2)(b)4.
Additionally, the FEC acknowledges in its answer brief that the Act and administrative rule “[do] not explicitly state when a deficiency must be cured.” It argues, however, that “it is apparent from the plain meaning of the statute that it must be cured while a person is a candidate who is not unopposed since only those candidates are eligible to be certified.” The FEC cites to section 106.33 for this propo *690 sition. However, nothing in that section or in the rule speak to the circumstances of this case. Instead, the statute provides that an unopposed candidate is not eligible to receive contributions from the fund. The definition of “unopposed candidate,” as provided for in section 106.011(18), Florida Statutes, does not include a candidate who was at one point eligible to receive matching funds but who is then ultimately eliminated in the primary election.
The FEC also argues that, pursuant to section 106.141(10), Florida Statutes, which imposes criminal penalties for accepting post-election “contributions,” the Division cannot distribute funds after a candidate is eliminated, because at that point, a candidate is not allowed to accept them. This argument lacks merit. The Act’s definition of “contributions” does not encompass the distribution of matching funds by the Division pursuant to the Act. The distribution of matching funds is not “made for the purpose of influencing the results of an election or making an electioneering communication,” nor does it otherwise meet the definition of “contribution.” See § 106.011(5).
The applicable statutes and rule do not support the action of the Division in this case. Additionally, the position of the Division and the FEC, under these circumstances, is contrary to the Legislature’s intent in passing the Act, to “encourage qualified persons to seek statewide elective office who would not, or could not otherwise do so and to protect the effective competition by a candidate who uses public funding.” § 106.31, Fla. Stat. We conclude that where a candidate for a Cabinet office submitted documentation before the primary election, some of the documentation contained legibility defects which made verification impossible, the candidate was advised of the defects after he was eliminated in the primary election, and he submitted clearer photocopies of some of the checks which had been disallowed, it would subvert the purpose of the Act to permit the Division to refuse to determine whether the candidate met the threshold amount for matching funds.
Based on the foregoing, we reverse and remand to the Division to conduct its review pursuant to section 106.35(1), and determine whether Thurston met the threshold for distribution of matching funds. If so, the Division shall distribute the funds.

Reversed and remanded with instructions.

Levine and Forst, JJ., concur.

. The statute provides, among other things, for matching funds for candidates for a Cabinet office who meet certain requirements in-eluding raising $100,000. § 106.33(2)(a)2,, Fla. Stat. (2014).